**CANADYNE-GEORGIA CORPORATION,**
**Plaintiff,**

v.

**NATIONSBANK, N.A. (SOUTH),**
**et al., Defendants.**

**No. 5:96–CV–114–1 (DF).**

United States District Court,
M.D. Georgia,
Macon Division.

June 11, 1997.

Walter H. Bush, Jr., Macon, GA, John Clay Spinrad, Brooke, Frankel, Dickerson, Atlanta, GA, for Canadyne-Georgia Corporation, Plaintiff.

Russell Wayne Thorpe, Atlanta, GA, for NationsBank, N.A.

Michele L. Davis, Atlanta, GA, Mara McRae, Richard A. Horder, Lisa G. Youngblood, Atlanta, GA, for J.W. Woolfolk Trust, Woolfolk Chemical Works, Ltd.

*ORDER*

FITZPATRICK, Chief Judge.

Before the Court is a motion to dismiss Defendant NationsBank from the above-styled case. The basis of NationsBank's motion is Rule 12(b)(6) of the Federal Rules of Civil Procedure; it contends that Plaintiff has failed to state a claim against NationsBank upon which relief could be granted.

## I. Facts

This case arises from alleged contamination at a property in Fort Valley, Georgia, which was formerly owned by the Plaintiff Canadyne (hereinafter referred to as the "Site"). Prior to Canadyne's ownership, the J.W. Woolfolk Company, and later Woolfolk Chemical Works, Ltd. ("WCW, Ltd.") operated an agricultural chemical facility at the Site. From 1942 to 1972, NationsBank's predecessor, Fulton National Bank of Atlanta, in its capacity as a co-executor of the estate of Mr. J.W. Woolfolk, and later as a co-trustee of a trust created by Mr. Woolfolk's will, maintained trust accounts that held interests in the Woolfolk partnership, WCW, Ltd. Canadyne alleges that during this time, hazardous substances were released at the Site.

WCW, Ltd. eventually incorporated and sold its stock to the Plaintiff corporation, Canadyne. Subsequently, NationsBank resigned as trustee and delivered the trust assets to new trustees. Thus, Canadyne's claims against NationsBank arise solely from its former status as a fiduciary.

## II. Legal Standard for Motion to Dismiss

Rule 8 of the Federal Rules of Civil Procedure set out the general rules of pleading. Specifically, Rule 8(a)(2) requires that a complaint contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has stated that the Federal Rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

The Eleventh Circuit has offered the following guidance in considering a motion to dismiss:

Before a court may dismiss a claim under Rule 12(b)(6), it must appear "beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Neither 'notice pleading' requirements nor the standards which govern dismissals under Rule 12(b)(6) require a claimant to set out in detail the facts upon which he bases his claim. Pretrial procedures such as summary judgment and the motion for a more definite statement are the appropriate devices to narrow the issues and disclose the boundaries of the claim or defense.

*In Re Southeast Banking Corp.,* 69 F.3d 1539, 1551 (11th Cir.1995).

The Supreme Court mandates that Plaintiffs must be given the benefit of any doubt.

> When a federal Court reviews the sufficiency of a complaint ... [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. . . . [I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### III. Analysis of Alleged CERCLA Liability

Defendant raises two different attacks on the alleged liability of NationsBank. First, Defendant argues that NationsBank is not a covered person under CERCLA. This argument can be divided into two subparts because Plaintiff alleges that Defendant is covered as both a prior owner of the Site and as an operator. Second, Defendant contends that it is protected from liability by a recently enacted provision of CERCLA, the Asset Conservation, Lender Liability, and Deposit Insurance Protection Act of 1996. 42 U.S.C. § 9606(n) et seq. Because the Court determines that Plaintiff's complaint fails to establish that NationsBank is a covered person under CERCLA, the Court does not reach Defendant's second contention.

Defendant claims that it cannot be a covered person under CERCLA. Section 107(a)(2) imposes liability on "any person who at the time of disposal of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2).

In its complaint, Plaintiff alleges that NationsBank, as successor to Fulton National, may be held liable as an owner of the Site at the time of contamination. During the relevant period of time, Fulton National served as a co-trustee for a trust which included a general partnership interest in Woolfolk Chemical Corp.

CERCLA does not provide a unique definition of the term, "owner." In the absence of a statutory definition, federal courts have followed the settled principle that property interests and rights are defined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Therefore, the Court looks to Georgia law to define the ownership interest of general partners in the Site. *See Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1498 (11th Cir.1996) (applying the law of Alabama to determine whether limited partners could be "owners" under CERCLA).

Under current Georgia law, the partnership and not the individual partners owns real property titled to the partnership. O.C.G.A. § 14–8–8(d). However, this was not the case at the time Fulton National held a general partnership interest in Woolfolk Chemical Works. *See Bloodworth v. Bloodworth,* 226 Ga. 898, 901, 178 S.E.2d 198, 200 (1970)("Legal title to real property can never vest in a partnership as such; legal title is in the partners as tenants in common."). Thus ownership of the facility was split between the individual partners, who owned the real property, and the partnership, which owned everything else. Plaintiff contends that Fulton National's status as a tenant in common and a general partner translates to individual liability for the obligations of the partnership. However, the laws of Georgia limit the ownership responsibilities of a trustee.

Under current Georgia law, a general partner may be "an individual, corporation, busi-

ness trust estate, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity, or any person acting in a representative capacity." O.C.G.A. § 14–9–101(5), (12). A comment to this provision, comparing the Georgia statute with the Revised Uniform Limited Partnership Act, states: "Paragraph (12) includes 'any person acting in a representative capacity.' It follows that where a general partner is such in his representative capacity, only the person represented—that is, the principal, trust or estate—is liable for partnership debts." [1] The observation in the above-quoted comment is supported by a current statute, O.C.G.A. § 53–12–199(c), which states: "A judgment rendered in an action brought against the trust shall impose no personal liability on the trustee or the beneficiary." The current statute is derived from one that dealt with the liability of the estate for services rendered. *See Smith v. Jarrett*, 76 Ga.App. 525, 46 S.E.2d 626, 628 (1948). Because the statute in effect at the time Fulton National owned the partnership interest in trust had such a limited scope, the Court must survey the common law to determine whether Georgia law would have barred the liability of a trustee for an action in tort.

Although a traditional view requires that tort liability lie with an individual, Georgia law has modified this rule by imposing liability on a trust for actions of the trustee if the trust benefited from those acts. *See Miller v. Smythe*, 92 Ga. 154, 158, 18 S.E. 46 (1893). Another case, *Beaudry, Inc. v. Freeman*, 73 Ga.App. 736, 38 S.E.2d 40 (1946), describes a corollary to the rule in which the liability for a tort committed by a trustee, who is operating a business according to testamentary design, is limited to the trust, or the trustee in his representative capacity, and not the trustee individually. *Id.*

Direction from a Settlor to continue the operation of a business is significant in determining whether a trustee faces individual liability. In *Beaudry*, the First National Bank qualified as executor under the testamentary scheme of the will of Ernest G. Beaudry, and became trustee of his automobile business, which included the Henry Grady Garage. *Id.* The Bank conducted the automobile business as a going concern and thereafter prompted the formation of the defendant corporation, Ernest G. Beaudry, Inc. *Id.* In considering the validity of a tort action for failure to properly maintain a sign in the garage, the Court noted that the testator specifically authorized and directed that his business be conducted by his representative as a going concern. *Id.* 38 S.E.2d at 47. The Court concluded:

> [T]here is no doubt in our minds but that under the testamentary scheme the First National Bank as executor and trustee of Ernest G. Beaudry was liable to the plaintiff for the injuries inflicted by its tortious act in its representative and not individual capacity. And the plaintiff had a right of action against the estate for which the executor and trustee was liable in his representative capacity.

*Id. See also Fife v. Richards*, 77 Ga.App. 698, 49 S.E.2d 772, 773 (1948) ("Where an executor is empowered and directed by the will to conduct and continue the business of the testator and in so doing he commits an actionable tort, the estate is liable to the same extent as an individual would be liable.") [2]

In this case, a trust was created by the will of Mr. J.W. Woolfolk.[3] The will gave Fulton National and Mrs. Elizabeth Woolfolk Moye,

---

1. The comments to Chapter 9 of Title 14 of the Official Code of Georgia Annotated were prepared under the supervision of the Joint Committee on Partnership Law of the Real Property and Corporate and banking Law Sections of the State Bar of Georgia and are included in the Official Code of Georgia Annotated at the request of these committees. Neither the General Assembly of Georgia nor the Code Revision Committee participated in the drafting of these comments or reviewed the comments for their content. The comments should not be considered to constitute a statement of legislative intention by the General Assembly of Georgia nor do they have the force of statutory law.

2. *Contra Evans v. Johnson*, 131 Mich.App. 776, 347 N.W.2d 198, 200 (1983) ("Under Michigan law, if the fiduciary is in control and possession and is negligent (fails to exercise due care), then the fiduciary individually, not the estate, is liable.")

3. Mr. Woolfolk died on September 27, 1945.

as executors and trustees, the authority to sell or exchange any interest in the Woolfolk Chemical Works, Ltd. "if in the sole discretion of the Trustee, the said business can not be successfully and profitably continued and operated as desired and indicated hereinafter in this instrument." The will further advised:

It is my express desire that the business of the Woolfolk Chemical Works, Limited, of Fort Valley Georgia, in which I am at this time a general partner, be continued if practicable, and my said Executors and Trustees are fully and expressly authorized to continue and participate in said limited partnership either directly or by nominee as general or special partners, on any terms that may seem to them to be advisable.

■ The foregoing analysis reveals that although Fulton National held a general partnership interest in Woolfolk Chemical Works in trust, Georgia trust law prohibited liability for the obligations of the partnership. This restriction prevents the Court from finding that Fulton National could be considered "owners" under CERCLA under the analysis mandated by *Redwing Carriers*.

Furthermore, the Court notes that the fact that Fulton National held title to the real property at the Woolfolk facility as a tenant in common in the trust does not alter the Court's conclusion. The liability asserted in *Beaudry* was based on the alleged failure to properly maintain a sign in the garage; this liability attaches to the owner of the garage. 38 S.E.2d at 42. Whether the title to the garage was vested in the partnership or the partners individually did not concern the court in *Beaudry*, and, thus, the locus of title will not affect the outcome in this case. By affording fiduciaries protection from liability, Georgia law recognizes the limitations that are placed on the control a trustee can exert over property held in trust. Where the privileges of ownership are restricted, the obligations of ownership should be limited accordingly. By assigning liability to the trust res, Georgia law provides for the compensation of an injured party. Here, the fact that Fulton National was directed as trustee to continue the operations of Woolfolk Chemical

Works, Ltd., precludes a finding under CERCLA, that Fulton National is a prior "owner" as defined by the law of Georgia.

■ The Eleventh Circuit has held that a person may be considered an operator for purposes of CERCLA only when "they themselves actually participate in the wrongful conduct prohibited by the Act." *Jacksonville Electric Authority v. Bernuth Corp.*, 996 F.2d 1107, 1110 (11th Cir.1993) *quoting Riverside Mkt. Dev. Corp. v. International Bldg. Prods., Inc.*, 931 F.2d 327, 329 (5th Cir.1991). To be liable as an operator, a person must "play an active role in the actual management of the enterprise." *Id.*

In its amended complaint, Plaintiff alleges that Fulton National, as a general partner of WCW, Ltd., was an "operator" (as defined under CERCLA) of the Woolfolk Pesticide Plant at the time of the disposal of hazardous substances at the facility. Plaintiff argues that this allegation is sufficient to state an actionable claim against NationsBank. Defendant argues that a more specific allegation of Fulton National's involvement in the operations of the Woolfolk Pesticide Facility is required to survive this motion to dismiss.

A Court in the District of Colorado has recently applied the substantial control test of *Jacksonville Electric Authority* in the context of a motion to dismiss. In dismissing a claim based on operator liability, the court made the following observations:

In this case, Plaintiffs allege that Parks controlled activities at the Thoro site connected with the off loading, storage, and shipping of Parks products and that Parks had authority over such activities. The Court finds that these allegations alone are not sufficient to satisfy the "substantial control" standard articulated above because they fail to specify the degree of control exercised by Parks. To be held liable as an operator of the Thoro facility, Parks must have been involved in the daily operations of the facility and have exercised pervasive control over its operations. The Court therefore finds, as a matter of law, that Parks cannot be considered an operator of the Thoro facility under CERCLA section 107(a)(2).

*Mathews v. Dow Chemical Co.,* 947 F.Supp. 1517, 1526 (D.Colo.1996).

█ The Court finds that the rationale of *Mathews* is persuasive and is not in conflict with the general policy of notice pleading set out in the Federal Rules of Civil Procedure. Therefore, the Court holds that Plaintiff's allegations that Fulton National was an operator without elaborating on the facts that form the basis of this claim, regarding the actual control Fulton National exerted over the Woolfolk facility, is insufficient to state a claim for CERCLA liability.

## IV. State Law Claims

Count III of Canadyne's Amended Complaint is based on the Georgia Hazardous Site Response Act ("HSRA"), O.C.G.A. §§ 12–8–90 et seq. Georgia's HSRA incorporates the same definition of owner and operator as CERCLA. *Compare* O.C.G.A. § 12–8–92(7)(B) *with* 42 U.S.C. § 9607(a)(2). Therefore, the Court's analysis of the federal statute also mandates dismissal of Count III.

█ The remaining Counts in Plaintiff's Amended Complaint raise claims for contribution, indemnity, and restitution and/or unjust enrichment. Contribution, indemnity, and restitution require a plaintiff to first demonstrate that the defendant received a benefit from the plaintiff's actions. In this case, Plaintiff cannot demonstrate that it conferred a benefit on the Defendant NationsBank because NationsBank had no duty under CERCLA to assist in the cleanup. *Florida Power & Light Co. v. Allis Chalmers Corp.,* 85 F.3d 1514, 1520 (11th Cir.1996). Also, to the extent Plaintiff states a claim for negligence, the shield for liability of a fiduciary, discussed *supra,* applies. Consequently, Plaintiff's state law claims against Defendant NationsBank fail as a matter of law.

Accordingly, Defendant NationsBank's motion to dismiss is hereby **GRANTED**.