[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 97-9357

D. C. Docket No. 5:96-CV-114-1(DF)

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/11/99
THOMAS K. KAHN
CLERK

CANADYNE-GEORGIA CORPORATION,

Plaintiff-Appellant,

versus

NATIONSBANK, N.A. (SOUTH), as successor by
merger to Bank South, f.k.a. Bank South, N.A., etc.,
Individually and in its capacity and executor and trustee
of the J.W. Woolfolk Trust; THE J. W. WOOLFOLK
TRUST, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Georgia

(August 11, 1999)

Before EDMONDSON and BLACK, Circuit Judges, and RESTANI[*], Judge.

BLACK, Circuit Judge:

_____

[*] Honorable Jane A. Restani, Judge, U. S. Court of International Trade, sitting by designation.

Appellant Canadyne-Georgia Corporation (Canadyne) appeals the district court's dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of Canadyne's complaint against NationsBank, N.A. (South) (the Bank). Canadyne's allegations, if proved, would support its claims against the Bank. Accordingly, we reverse the district court's dismissal of the complaint and remand for further proceedings.

## I. BACKGROUND

Between 1990 and 1995, the Environmental Protection Agency (EPA) issued orders requiring, among other things, that Canadyne evaluate property in Fort Valley, Georgia (the Site), relocate residents living near the Site, remove contaminated soil from the Site, and purify the groundwater at the Site. Under the direction of the EPA and the Georgia Environmental Protection Division (GEPD), Canadyne has spent the last decade and many millions of dollars cleaning up the Site. On March 22, 1996, Canadyne sued the Bank, as well as the J. W. Woolfolk Trust (the Woolfolk Trust), the current trustees of the Woolfolk Trust, Woolfolk Chemical Works, Ltd. (WCW), and certain former partners in WCW, claiming they were liable under the Comprehensive Environmental Response Compensation and Liability Act of 1980 (CERCLA), the Georgia Hazardous Site Response Act (HSRA), and Georgia common law for response costs Canadyne has incurred in cleaning up the Site.

The parties' connection to the Site goes back over 80 years. In 1921, Mr. John W. Woolfolk founded a company, which in 1941 became WCW. Mr. Woolfolk was a general partner in WCW, which manufactured pesticides at the Site from 1942 to 1972. Woolfolk's pesticide plant released the hazardous substances, including arsenic, that Canadyne has been required to clean up.

2

In 1942, Mr. Woolfolk established for the benefit of his daughters three inter vivos trusts, for which the Bank's predecessor, Fulton National Bank of Atlanta, served as co-trustee.[2] The trusts owned greater than 50% of the limited partnership interests in WCW. Mr. Woolfolk died in 1945. His will named the Bank as co-executor of his estate, which included his general partnership interest in WCW. Five years later, the Bank became a trustee of the Woolfolk Trust, the assets of which included Mr. Woolfolk's general partnership interest in WCW.

In 1972, WCW incorporated, and in 1977, it was purchased by a corporate affiliate of Canadyne. Canadyne sold the pesticide business and most of its assets in 1984. Subsequently, the Bank resigned as trustee of the Woolfolk Trust and the inter vivos trusts and delivered the trust assets to new trustees. As discussed above, it was not until the 1990s that the EPA required Canadyne to clean up the Site.

Canadyne sued, and the Bank moved to dismiss Canadyne's amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. The district court granted the Bank's motion, concluding the Bank was not a "covered person" within the meaning of § 107(a)(1) of CERCLA.[3] *Canadyne-Georgia Corp. v. NationsBank*, 982 F. Supp. 886, 890 (M.D. Ga. 1997). As for Canadyne's state law claims, the district court held that, as Georgia's HSRA statute incorporates the same definitions and standards for owner and operator liability as

---

[2] Fulton National Bank of Atlanta changed its name to Bank of the South, N.A., then to Bank South, N.A., and then to Bank South. In 1996, Bank South merged with and into Appellee NationsBank, N.A. (South). Thus, for purposes of this opinion, we will refer to each bank (be it the Appellee or one of its predecessors) as "the Bank."

[3] The district court did not address the Bank's alternative argument that it was protected from liability by the Asset Conservation, Lender Liability, and Deposit Insurance Protection Act of 1996 (the Asset Conservation Act or the Act), 42 U.S.C. § 9607(n).

CERCLA, dismissal of Canadyne's CERCLA claims mandated dismissal of its state law HSRA claim. *Id.* at 891. The district court further held that, since the Bank had no liability under either CERCLA or HSRA, Canadyne's other state law claims under Georgia common law for contribution, indemnity, and restitution also failed as a matter of law. *Id.* On appeal, Canadyne asserts the district court erred in concluding that the Bank was not a "covered person" under CERCLA.[4]

## II. STANDARD OF REVIEW

"In reviewing de novo a dismissal pursuant to Rule 12(b)(6), we apply the same standard as did the district court." *South Florida Water Management Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996) (citation omitted). "The motion must be denied unless it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Id.* (citation omitted).

## III. DISCUSSION

Canadyne brought its CERCLA contribution claim against the Bank under §§ 107(a) and 113(f) of CERCLA, codified at 42 U.S.C. §§ 9607(a), 9613(f). Section 113(f) provides "[a]ny person may seek contribution from any other person who is liable or potentially liable under

---

[4] Canadyne also appeals the district court's dismissal of its claims under HSRA and Georgia common law. The district court correctly determined that because HSRA incorporates the same definitions and standards for owner liability as CERCLA, a proper dismissal of the CERCLA claims would mandate dismissal of the HSRA claim. Likewise, however, reversal of an improper dismissal of the CERCLA claims would mandate reversal of the dismissal of the HSRA claim. Since we reverse the dismissal of the CERCLA claims, we also reverse the district court's dismissal of the state law claims. Although we reverse the dismissal of the HSRA claim, we do emphasize that the Georgia statute expressly exempts from liability anyone "who acts in good faith solely in a fiduciary capacity and who did not actively participate in the management, disposal, or release of hazardous wastes, hazardous constituents, or hazardous substances from the facility." O.C.G.A. § 12-8-92(7)(C). Canadyne has, of course, alleged in its complaint that the Bank did not act solely in a fiduciary capacity.

4

section 9607(a) [§ 107(a)] of this title."  42 U.S.C. § 9613(f)(1).

Canadyne alleges the Bank is liable as an "owner" of the Site under § 107(a)(2) of CERCLA, which imposes liability on "any person who at the time of disposal of any hazardous substance *owned* or operated any facility at which such hazardous substances were disposed of."[5] 42 U.S.C. § 9607(a)(2) (emphasis added).  In this regard, Canadyne emphasizes that during the time of contamination, the Bank served as a trustee for trusts, the assets of which included a general partnership interest and limited partnership interests in WCW, the company that allegedly contaminated the Site.  In response, the Bank contends it cannot be deemed an "owner" under § 107(a)(2) and, even if it can, it is exempt from liability under the Asset Conservation Act.[6]

CERCLA imposes two barriers Canadyne must overcome at the outset to avoid dismissal

---

[5] Before the district court, Canadyne also asserted the Bank should be liable under § 107(a)(2) as an "operator" of the Site.  On appeal, however, Canadyne has withdrawn its arguments for "operator" liability, in light of the United States Supreme Court's recent decision in *United States v. Bestfoods*, 524 U.S. 51, 118 S. Ct. 1876 (1998).

[6] Canadyne makes much of what it considers the district court's finding that the Bank was an owner and the Bank's admission that it was an owner.  Indeed, Canadyne contends that whether the Bank is an "owner" under CERCLA is not even at issue on appeal.  Upon reading the district court's opinion and the record on appeal, we disagree.  Although the district court found and the Bank conceded it was an owner in its *fiduciary* capacity (as a trustee for a trust holding a general partnership interest in a limited partnership owning the Site), personal liability under CERCLA attaches only to those that are deemed owners under CERCLA.  The district court in fact based its entire decision on its conclusion that the Bank should not be deemed a CERCLA owner.  *See Canadyne-Georgia*, 982 F. Supp. at 890 ("This restriction prevents the Court from finding that Fulton National could be considered 'owners' under CERCLA under the analysis mandated by *Redwing Carriers*. . . . Here, the fact that Fulton National was directed as trustee to continue the operations of Woolfolk Chemical Works, Ltd., precludes a finding under CERCLA, that Fulton National is a prior 'owner' as defined by the law of Georgia.").  Furthermore, we could find no place in the record where the Bank admitted it was an owner for purposes of CERCLA.

5

of its claims against the Bank.  First, CERCLA subjects only "covered persons" to liability.

There are only four classes of potentially responsible parties under § 107(a).  42 U.S.C.

§ 9607(a).  As discussed above, Canadyne claims the Bank is potentially responsible, because it

was an "owner" of the Site at the time of the disposal of hazardous substances.  Second, even if

deemed "owners" under CERCLA, fiduciaries like the Bank are protected from personal

liability, with a few exceptions, by the Asset Conservation Act.[7]  Canadyne must overcome each

barrier separately.  Although we could address the issues in either order, for the sake of

simplicity, we will address them in the same order as did the district court.

The question of whether a particular defendant can be deemed an "owner" under

CERCLA turns on application of state law, and consequently, the answer may vary from state to

state.  *See Redwing Carriers, Inc. v. Saraland Apartments Ltd.*, 94 F.3d 1489, 1498 (11th Cir.

1996).  In this case, we look to Georgia law at the time of the release of hazardous substances at

the Site to determine whether the Bank was an owner for purposes of CERCLA liability.  Even

though the Bank technically held its WCW general partnership interest in trust, under Georgia

law, the Bank held legal title to and therefore owned the general partnership interest.  *See*

O.C.G.A. § 53-12-2(11) (trustee "hold[s] legal title to the property in trust").  The Bank therefore

owned whatever property the general partners of WCW owned.

Under current Georgia law, the partnership, not the individual partners, owns real

property held in the name of the partnership.  O.C.G.A. § 14-8-8(f).  At the time the Bank held a

---

[7] Congress made clear the Act does not create liability.  *See* 42 U.S.C. § 9607(n)(6)(B) ("Nothing in [the Act] creates any liability for a person or a private right of action against a fiduciary or any other person.").  Rather, the Act merely limits liability that might otherwise be present.  The Act can only help the Bank.

general partnership interest in WCW, however, the individual partners owned the real property of the partnership. *See Bloodworth v. Bloodworth*, 178 S.E.2d 198, 200 (Ga. 1970) ("Legal title to real property can never vest in a partnership as such; legal title is in the partners as tenants in common." (citations omitted)). Since the Bank owned a general partnership interest that owned the Site, the Bank owned the Site. Thus, under Georgia law and, *ipso facto,* for purposes of CERCLA, the Bank was an "owner."[8] *See Redwing Carriers*, 94 F.3d at 1498 (equating the holding of title to being an owner under CERCLA). We now turn to the closer question of whether the Bank was entitled to dismissal of Canadyne's claims by virtue of the Asset Conservation Act.

In 1996, Congress enacted the Asset Conservation Act. The Act amended § 107 of CERCLA to protect fiduciaries from personal liability for the costs of cleaning up environmental hazards:

---

[8] We do not mean to suggest that anyone who holds a general partnership interest in trust is an owner for purposes of CERCLA. In fact, the result in this case is somewhat anachronistic. Under the Uniform Partnership Act, which Georgia adopted in 1984, the partnership, not the individual partners, owns real property titled to the partnership. *See, e.g.*, O.C.G.A. § 14-8-8(f). So, if there were a release of hazardous substances at partnership property today, the general partners would not own the property and therefore would not be directly liable under CERCLA. The general partners might nonetheless be held indirectly, or vicariously, liable—might be deemed "owners"—under CERCLA because of their relationship to the partnership. *See Redwing Carriers*, 94 F.3d at 1499 ("That the Hutton partners are not owners of the Site under CERCLA does not end our analysis. This only means the limited partners are not directly liable under the Act for cleaning up the Site. The question remains whether the Hutton partners, by virtue of their being limited partners in the Partnership, are accountable indirectly for the Partnership's CERCLA liability under applicable partnership law."). A trustee holding a general partnership interest in trust, however, might escape this indirect liability by virtue of state trust law. *See* Restatement (Second) of Trusts § 265 ("Where a liability to third persons is imposed upon a person, not as a result of a contract made by him or a tort committed by him but because he is the holder of the title to property, a trustee as holder of the title to the trust property is subject to personal liability, but *only to the extent to which the trust estate is sufficient to indemnify him.* (emphasis added)).

Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. § 9607) is amended by adding at the end the following: '(n) Liability of fiduciaries.—
(1) In general.—

The liability of a fiduciary under any provision of this Act for the release or threatened release of a hazardous substance at, from, or in connection with a vessel or facility held in a fiduciary capacity shall not exceed the assets held in the fiduciary capacity.'

Asset Conservation Act, Pub. L. No. 104-208, Div. A., Title II, Subtitle E, § 2502, 110 Stat. 3009, 3009-462 (1996). In general, the amendment limits the liability of fiduciaries to the assets held in a fiduciary capacity.[9] That is, fiduciaries, even those who might otherwise be deemed "owners" under § 107(a), generally cannot be held personally liable under CERCLA. There are, however, a few narrow exceptions to fiduciaries' exemption from CERCLA liability.

Canadyne argues for application of the exception found in § 2502(n)(3) of the Asset Conservation Act.[10] That subsection provides that the Act "do[es] not limit the liability

_____

[9] That fiduciaries may nonetheless be liable in their fiduciary capacity to the extent of the assets held in trust would not help Canadyne here. The Bank's liability in its fiduciary capacity is not at issue.

[10] Canadyne also argues for application of an exception found in section 2502(n)(7) of the Asset Conservation Act. That subsection provides that the Act does not limit fiduciary liability where the fiduciary "acts in a capacity other than that of a fiduciary [and] in that capacity, directly or indirectly benefits from a trust or fiduciary relationship." 42 U.S.C. § 9607(n)(7)(A)(i), (ii). Although Canadyne alleges in its complaint that the Bank's dual role as fiduciary and as the primary lender to Mr. Woolfolk and WCW, by itself, brings the Bank under this exception, we are confident Congress did not intend for the mere existence of a lending relationship to be enough to bring a fiduciary under this exception. Canadyne's expansive interpretation of the exception would render the protections of the Asset Conservation Act virtually meaningless for banks, the very group Congress intended to protect. Although the amendments to CERCLA found in the Asset Conservation Act were buried within a defense appropriations bill, what little legislative history exists makes clear the Act was passed in response to lobbying efforts by banks to protect them from liability under CERCLA. *See, e.g.,* 141 Cong. Rec. S2528, S2528 (daily ed. Feb. 10, 1995) (statement of Sen. D'Amato, the Act's sponsor) ("This bill addresses an urgent issue facing America's banks and lenders today—the

pertaining to a release or threatened release of a hazardous substance if negligence of a fiduciary causes or contributes to the release or threatened release." 42 U.S.C. § 9607(n)(3). Citing this negligence exception to the Act's limitation of fiduciary liability, Canadyne claims that the Bank's negligence caused or contributed to the release of hazardous substances at the Site.[11]

To gain the benefit of the negligence exception, Canadyne must present evidence that the Bank took particular negligent actions that caused or contributed to the release of hazardous substances. Here, the negligence exception requires some action because the Bank had no duty to prevent someone else from releasing hazardous substances. Canadyne has mentioned only one possible source of the Bank's duty to prevent others from releasing hazardous substances: CERCLA. However, CERCLA had not been enacted at the time the hazardous substances were released at the Site.

Even assuming *arguendo* that CERCLA were in effect at the time the Bank allegedly failed to prevent the pollution at the Site, CERCLA imposes no duty to act. CERCLA does not allocate liability based on fault or negligence; it is a strict liability statute. CERCLA imposes

---

imposition of massive liability for the cleanup of property . . . . But lenders should not be held liable merely because of their deep pockets.").

[11] In addition to contending that the Bank negligently caused or contributed to the releases at the Site, Canadyne argues that the alleged negligence or negligence *per se* of the WCW employees who actually caused the releases should be imputed to the Bank based upon its status as a former general partner in WCW. This argument lacks merit. To begin with, the Bank was not a general partner, but a co-trustee for a trust, the assets of which included a general partnership interest. Yet, even assuming *arguendo* that the Bank was a general partner, Canadyne must show the Bank itself negligently caused or contributed to the pollution. Just because under state partnership law a partnership and its partners may be vicariously liable for the negligence of any one partner or employee of the partnership does not mean every partner herself negligently caused the accident. Vicarious liability, or "imputed negligence," is not the same as saying "negligence of a fiduciary cause[d] or contribute[d] to the release," as required under the Asset Conservation Act. *See* 42 U.S.C. § 9607(n)(3).

9

liability on individuals not based on their causing the release of hazardous substances, but based solely on their prior or current relationship to the polluted property. For instance, the owner of land is directly liable under CERCLA, regardless of whether he or she caused or contributed to the release of hazardous substances there. In addition to those who face direct liability, certain individuals may be indirectly, or vicariously, liable as "owners" under CERCLA, not because they owned the land or contributed to the release of hazardous substances there, but because of their relationship to the owners of the land. *See Redwing Carriers*, 94 F.3d at 1499. As an example, if a partnership were directly liable as an owner of land, then the general partners in that partnership might be indirectly liable. *Id.* But CERCLA imposes no duty to act, and thus the Bank could not have been negligent in failing to prevent others from polluting.

Canadyne has made no allegation of any particular action by the Bank that caused or contributed to the release of hazardous substances. Rather, Canadyne baldly asserts in its complaint that the Bank "negligently released or allowed the release of hazardous substances." Of course, to survive summary judgment, much less to prevail, Canadyne must do more than just utter the word "negligence." But here we are reviewing the dismissal of Canadyne's complaint. Although Canadyne may struggle to present evidence to support its allegations of negligence and causation, this case comes to us in a Rule 12(b)(6) posture. As such, we must take the allegations of the complaint as true.

The sufficiency of a complaint is measured by Fed. R. Civ. P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has emphasized that the Federal Rules "do not require a claimant to set out in detail the facts upon which he bases his claim." *Leatherman v. Tarrant County Narcotics*

10

*Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993) (quotations and citations omitted). Our Circuit, interpreting the Federal Rules, has repeatedly stated that "a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Banco Continental v. Curtiss Nat'l Bank of Miami Springs*, 406 F.2d 510, 514 (5th Cir. 1969) (quotations, citations, and footnote omitted);[12] *see also Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 998 (11th Cir. 1983) (collecting cases). In fact, "[t]his mandate is particularly true where, as here, issues of negligence are involved." *Banco*, 406 F.2d at 514. We are compelled by precedent to hold that "[i]t is sufficient against a motion to dismiss to allege that defendant acted negligently [thereby causing injury]. The complaint, in substantial compliance with [Rule 8(a)] was good against the motion to dismiss." *Augusta Broadcasting Co. v. United States*, 170 F.2d 199, 200 (5th Cir. 1948) (footnote omitted).

In concluding that the complaint should not have been dismissed, however, we do not mean to intimate that the Bank is liable under CERCLA; we merely state that the complaint satisfies the very low threshold of sufficiency prescribed by the Federal Rules of Civil Procedure, as interpreted by the Supreme Court and this Court. The Bank will have an opportunity to move for summary judgment at the appropriate time.

In addition, simply because its complaint can survive a motion to dismiss does not authorize Canadyne to engage in wholesale discovery. This Circuit has been critical of notice

---

[12] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

pleading.[13]  Yet, we are bound by precedent not to require more.  That is why "it is particularly important for district courts to undertake the difficult, but essential, task of attempting to narrow and define the issues from the earliest stages of the litigation."  *Ebrahimi*, 114 F.3d at 165; *see also Johnson Enter. of Jacksonville, Inc.*, 162 F.3d at 1333 ("As we have previously stated, and state once again, district courts have the power and the duty to define the issues at the earliest stages of litigation." (citations omitted)).  Here, for example, the district court may limit discovery to determining whether the Bank, through its negligent action, caused or contributed to the release of hazardous substances at the Site.  *See* 42 U.S.C. § 9607(n)(3).

IV.  CONCLUSION

After reviewing the allegations in Canadyne's complaint, we conclude the district court erred in determining that the complaint failed to state a claim upon which relief could be granted.

REVERSED AND REMANDED.

---

[13] *See, e.g.*, *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1332-33 (11th Cir. 1998); *Morro v. City of Birmingham*, 117 F.3d 508, 515 (11th Cir. 1997), *cert. denied*, 118 S. Ct. 1299 (1998); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997); *Anderson v. District Bd. of Trustees of Cent. Fla. Community College*, 77 F.3d 364, 366-67 (11th Cir. 1996).  *Cf. South Fla. Water Management Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996) ("As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss.") (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).