PALMTREE ACQUISITION COR-
PORATION, a Delaware cor-
poration, Plaintiff,

v.

Michael R. NEELY, an individual,
et al., Defendants.

The Kirrberg Corporation, formerly
known as Multimatic Corporation, a
New Jersey Corporation; and Stark
Investment Company, L.P., a Califor-
nia limited partnership, Third–Party
Plaintiffs,

v.

Melinda Ellis Evers, Successor Trustee
of the Harold A. Ellis, Jr. Revocable
Inter Vivos Trust Dated July 13, 2000,
et al., Third–Party Defendants.

No. C 08–3168 MHP.

United States District Court,
N.D. California.

Feb. 11, 2011.

---

Stuart I. Block, Peter Mahoney Morrisette, Cox, Castle & Nicholson LLP, San Francisco, CA, for Plaintiff.

Christopher Richard Pantel, Fred M. Blum, Noel Edlin, Bassi, Edlin, Huie & Blum LLP, Robert C. Goodman, Zachary Mark Radford, David Kevin Shipp, Rogers Joseph O'Donnell, San Francisco, CA, Ian Paul Culver, Thomas F. Vandenburg, Dongell Lawrence Finney LLP, Los Angeles, CA, Bruce Clinton Paltenghi, Gordon Watrous Ryan Langley Bruno & Paltenghi Inc., Martinez, CA, Paul Kozachenko, Gonsalves & Kozachenko, Fremont, CA, Daniel Paul Costa, The Costa Law Firm, Sacramento, CA, Seleňa P. Ontiveros, Hopkins & Carley, San Jose, CA, for Defendants.

Jonathan Edward Sommer, Stein & Lubin LLP, San Francisco, CA, for Melinda Ellis Evers.

## MEMORANDUM & ORDER

**Re: Motion to Dismiss Second Amended Third–Party Complaint against Melinda Ellis Evers, Successor Trustee of the Harold A. Ellis, Jr. Revocable Inter Vivos Trust Dated July 13, 2000**

MARILYN HALL PATEL, District Judge.

Defendants/third-party plaintiffs The Kirrberg Corporation and Stark Investment Company filed a third-party complaint for CERCLA contribution, declaratory relief and equitable indemnity against Melinda Ellis Evers ("Trustee Evers"), Successor Trustee of the Harold A. Ellis, Jr. Revocable Inter Vivos Trust Dated July 13, 2000 ("Revocable Family Trust") as well as several other third-party defendants. Now before the court is Trustee Evers' motion to dismiss the Second Amended Third–Party Complaint ("SATC"), in which she argues that Harold A. Ellis, Jr. was not personally liable under CERCLA prior to his death because as a fiduciary he is protected from liability beyond the assets of the trust. Having considered the arguments of the parties and for the reasons stated below, the court enters the following memorandum and order.

## BACKGROUND

As set forth in the October 4, 2010 Memorandum and Order dismissing the third-party plaintiffs' First Amended Complaint ("FAC"), Docket No. 107, this action concerns the allocation of costs to remediate perchloroethene ("PCE") contamination in the soil and groundwater in the vicinity of the Livermore Arcade Shopping Center ("LASC") and Millers Outpost Shopping Center ("MOSC") in Livermore, California. The parties include present and former owners of LASC and MOSC, the operators of the dry cleaning businesses alleged to have released a significant quantity of PCE, the manufacturer of the equipment used by the dry cleaning businesses, and several related individuals.

Defendant Grubb & Ellis Realty Income Trust, Liquidating Trust ("GERIT") owned and operated LASC from 1989 through 1996. Docket No. 1 (Compl.) ¶ 13 (incorporated by reference into SATC ¶ 1). On February 2, 1993, GERIT brought an action under CERCLA related to the PCE contamination against many of the parties to the present action, including third-party plaintiffs. Docket No. 110 (SATC) ¶ 18. On or about February 7, 1994, the parties to the earlier action entered into a settlement agreement. *Id.* ¶ 20. Paragraph 9 of the settlement agreement contained a "Re-opener" clause, which provided that "actions by governmental agencies requiring cleanup of PCE contamination ... of the deeper aquifer as defined in Paragraph 5 of the SCO [Site Cleanup Order] ..." were excepted from the releases otherwise contained in the settlement. *Id.* ¶¶ 20–21. As part of the 1994 settlement, the settling parties appointed Ellis Partners, Inc. ("EPI") as the Project Manager to oversee the remediation efforts. SATC ¶ 22. GERIT had previously appointed EPI as its Liquidating Agent. *Id.* ¶ 19. Harold A. Ellis, Jr. was a co-trustee of GERIT and a managing partner of EPI. *Id.* ¶¶ 12, 19.

After the remediation commenced, in April 1996 the San Francisco Bay Regional Water Quality Control Board ("RWQCB") issued an order, Order No. 96–052, establishing a Containment Zone. SATC ¶ 29; Compl. Exh. 2. The order also required further groundwater monitoring and set trigger levels of PCE for outside the Containment Zone, which could prompt further investigation and/or remediation. *Id.* In April 1996, the RWQCB sent GERIT a letter stating that "no further action related to the PCE pollution site is required,

provided the site remains in compliance with Order No. 96–052[.]" SATC ¶ 32; Docket No. 66, Exh. D. GERITs 10–Q for September 30, 1997, which was signed by Harold A. Ellis, Jr., reported that GERIT had received a No Further Action Letter from the RWQCB indicating that clean-up requirements had been satisfied and that a monitoring program was required for a period of approximately 24 months. SATC ¶ 33; Docket No. 66, Exh. C at 7. GERIT sold LASC to third-party defendants The Anderson Marital Trust and Anderson Tax Deferral Trust in 1996, and in December 1997, GERITs assets were distributed in their entirety. SATC ¶ 35–37 & Docket No. 66, Exh. C at 6, 9.

On or about March 17, 2008, the RWQCB informed the parties subject to Order No. 96–052 that the Containment Zone had been breached and ordered a technical report to address the presence of PCE in the deeper aquifer. SATC ¶ 38 & Exh. 1. This RWQCB letter triggered the Re-opener provision of the 1994 settlement agreement. *Id.* After informal negotiations among the settling parties failed, on July 1, 2008 plaintiff Palmtree Acquisition Corporation brought this action to recover cleanup costs and damages under CERCLA. Compl. ¶ 22.

Harold A. Ellis, Jr. passed away on January 6, 2009. SATC ¶ 7. On January 5, 2010, third-party plaintiffs filed the Third–Party Complaint, naming the "Estate of Harold A. Ellis, Jr." as a third-party defendant. Docket No. 26 (Compl.). On March 12, 2010, the Estate filed a motion to dismiss, contending that the Estate was not a proper party and that Ellis had no personal liability under CERCLA. Docket No. 36 (Mot.). The parties stipulated for leave to file the First Amended Third–Party Complaint ("FATC"), Docket No. 63, which was filed on May 24, 2010. The FATC replaced the Estate with "Melinda Ellis Evers, Successor Trustee of the Ha-rold A. Ellis, Jr. Revocable Inter Vivos Trust Dated July 13, 2003" as third-party defendant. FATC ¶ 7. No probate was ever opened, and third-party plaintiffs allege that they never received a notice of administration or creditor's claim. Opp. at 4. All of Ellis's assets were instead held in trust. *Id.* at 5.

On October 4, 2010, the FATC was dismissed without prejudice, Docket No. 107. This court determined that the FATC set forth no theory or set of facts under which Ellis could be held personally liable for recovery costs for CERCLA violations, and thus granted trustee Evers' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Specifically, this court held that: (1) the FATC was timely under Federal Rule of Civil Procedure 15(c)(3) because the claims against Trustee Evers "related back" to those claims originally filed against the "Estate of Harold A. Ellis, Jr.;" (2) the FATC failed to demonstrate how Ellis acted in a capacity other than that of a fiduciary that would give rise to personal liability for a CERCLA violation; (3) the FATC failed to allege particular actions by Ellis that negligently contributed to the release of PCE that would give rise to fiduciary CERCLA liability. Third-party plaintiffs timely filed their Second Amended Third–Party Complaint ("SATC") on October 27, 2010, Docket No. 110, and Trustee Evers filed the instant motion to dismiss for failure to state a claim on November 24, 2010, Docket No. 112.

*LEGAL STANDARD*

■ Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001).

Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). A motion to dismiss should be granted if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 569, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

Allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996). The court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action. *Iqbal,* 129 S.Ct. at 1950; *see also Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001); *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950.

## DISCUSSION

### I. *Ellis' Personal Liability Under CERCLA*

 CERCLA imposes liability upon "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. 9607(a)(2). An "owner" is determined by state law at the time of release. *See Am. Int'l Specialty Lines Ins. Co. v. United*

*States,* No. CV 09–01734 AHM, 2010 WL 2635768, at *21 (C.D.Cal. June 30, 2010). In California, legal property owned by a trust is held by the trustee. *See Stoltenberg v. Newman,* 179 Cal.App.4th 287, 293, 101 Cal.Rptr.3d 606 (2009). Because LASC was at one time owned by GERIT, Harold A. Ellis, Jr., as co-trustee of GERIT, held legal title to LASC under California law. *See also* SATC ¶ 12 (noting that GERIT's Liquidating Trust Agreement provided that "the whole title to all the Liquidating Trust Estate shall be vested in the Trustees"). The Revocable Family Trust, however, never had an ownership interest in LASC. In order to reach Ellis' assets held by the Revocable Family Trust, third-party plaintiffs therefore need to establish some basis for holding Ellis personally liable for the PCE investigation and remediation costs.

In 1996, Congress amended CERCLA to explicitly protect fiduciaries from personal liability stemming from environmental cleanup costs. *See* Asset Conservation Act, Pub.L. No. 104–208, Div. A., Title II, Subtitle E, § 2502, 110 Stat. 3009, 3009–462 (1996). Section 107 of CERCLA now provides:

 (n) Liability of fiduciaries

(1) In general

The liability of a fiduciary under any provision of this chapter for the release or threatened release of a hazardous substance at, from, or in connection with a vessel or facility held in a fiduciary capacity shall not exceed the assets held in the fiduciary capacity.

42 U.S.C. § 9607(n)(1). "In general, the amendment limits the liability of fiduciaries to the assets held in a fiduciary capacity. That is, fiduciaries, even those who might otherwise be deemed 'owners' under 107(a), generally cannot be held personally liable under CERCLA." *Canadyne–Georgia Corp. v. NationsBank, N.A. (South),*

183 F.3d 1269, 1274 (11th Cir.1999). A "fiduciary" is specifically defined to include a person acting as a "trustee." 42 U.S.C. § 9607(n)(5)(A)(i)(I). Ellis was a trustee who owned trust property, and the Asset Conservation Act therefore protects him from personal liability for CERCLA violation costs even though he might otherwise be deemed an owner. In order for Ellis to be held personally liable for environmental cleanup costs, he must fall into a statutory exception to the fiduciary exemption from personal liability.

Third-party plaintiffs allege no action by Ellis that would create liability under CERCLA independent of his role as an owner and trustee of a contaminated site. They contend, however, that two exceptions to the fiduciary exemption render Ellis liable in his personal capacity. Although the court notes a relative dearth of case law addressing fiduciary liability under CERCLA, third-party plaintiffs have not plausibly alleged that either exception applies.

## II. *Fiduciary Acting in a Capacity Other than a Fiduciary Exception*

■ Under the first potentially relevant exception, the Asset Conservation Act does not limit fiduciary liability if a person (1) "acts in a capacity other than that of a fiduciary" and (2) "in that capacity, directly or indirectly benefits from a trust or fiduciary relationship." 42 U.S.C. § 9607(n)(7)(A)(i), (ii); *Canadyne–Georgia*, 183 F.3d at 1274 n. 9. CERCLA defines "fiduciary capacity" as "the capacity of a person in holding title to a vessel or facility, or otherwise having control of or an interest in the vessel or facility, pursuant to the exercise of responsibilities of the person as a fiduciary." 42 U.S.C. § 9607(n)(5)(B).

Third-party plaintiffs have amended their complaint to allege that Ellis acted outside his fiduciary capacity in two ways: by acting as the chairman of EPI, and by engaging in conduct that breached his fiduciary duty to the GERIT beneficiaries. The SATC contends that Ellis benefitted from his position as co-trustee of GERIT by selecting EPI—a company he founded and managed—to serve as GERIT's Liquidating Agent and by maneuvering for EPI to serve as project manager for the PCE remediation efforts. SATC ¶¶ 47–50; Opp. at 6. Although these allegations may be sufficient to show that Ellis benefitted from his fiduciary role for purposes of section 9607(n)(7)(A)(ii), the SATC fails to demonstrate how Ellis "act[ed] in a capacity other than of a fiduciary" for purposes of subsection (A)(i). Even if these alleged activities might be characterized as self-serving, third-party plaintiffs do not show any actions taken by Ellis with respect to the contaminated site that were not pursuant to his responsibilities as co-trustee of GERIT.[1]

Ellis is not automatically liable through this exception merely by virtue of serving in a dual role as co-trustee of GERIT and chairman of EPI. *See Canadyne–Georgia*, 183 F.3d at 1274 n. 9 ("Although Canadyne alleges in its complaint that the Bank's dual role as fiduciary and as the primary lender . . ., by itself, brings the Bank under this exception, we are confident Congress did not intend for the mere existence of a lending relationship to be enough to bring a fiduciary under this exception."). Similarly, the mere existence of the liquidating agent relationship between GERIT

---

1. Ellis' actions cannot be characterized as directly benefitting him. Ellis was never a beneficiary of GERIT, and even if he were, such status was specifically permitted under the Trust Agreement. ("A Trustee may be a Beneficiary to the same extent as if he were not a Trustee hereunder.") (Trust Agreement, Exh. A to SATC § 3.4)

and EPI is not enough to bring Ellis under the section 9607(n)(7)(A) exception. Third-party plaintiffs allege no set of facts indicating that Ellis' acts as chairman of EPI were nothing but consistent with, if not in furtherance of, his fiduciary duty to GERIT. Serving the trust in a dual capacity is not enough to show that he was acting outside his fiduciary capacity in such a way as to impose personal liability under CERCLA.

Third-party plaintiffs also amended their complaint to allege that Ellis acted in a capacity other than that of a fiduciary by breaching his fiduciary duties to GERIT. While they contend that Ellis breached his fiduciary duty by: (1) distributing the trust proceeds to the beneficiaries in 1997, SATC ¶ 37; (2) failing to "restore" or "reserve" any assets of the trust to pay for response costs the RWQCB required in 2008, SATC ¶¶ 49, 53; and (3) by making a "knowing[ ] and intentional[ ] misrepresentation to the SEC" regarding the status of the Site, SATC ¶ 48, these facts do not constitute a breach of fiduciary duty as a matter of law. A fiduciary is under a duty to "act for the benefit of another person on all matters within the scope of their relationship," *see* Black's Law Dictionary (West 2009), and Ellis was under a further contractual duty to make timely distributions of the trust proceeds to the beneficiaries (Trust Agreement, Exh. A to SATC § 5.2). Any wrongdoing by Ellis that third-party plaintiffs have alleged is to the detriment of GERIT's ostensible creditors, not to its beneficiaries; no facts demonstrate acts constituting a potential breach of fiduciary duty.

■ The SATC alleges that Ellis breached his fiduciary duty to GERIT beneficiaries by distributing the trust proceeds and terminating the trust "because not all of GERIT's obligations had been discharged." SATC ¶ 37. They further contend that Ellis breached his fiduciary duty when he failed to reserve money in the trust for future liabilities and, once the re-opener provision of the settlement agreement was triggered, when he failed to "restore the improper distributions to the beneficiaries." SATC ¶ 49. Neither of these allegations are sufficient to plausibly suggest that Ellis breached his fiduciary duty to GERIT. The actions of a trustee are presumed to be in good faith, and the burden is on the party challenging the action to show otherwise. *Young v. McCoy,* 147 Cal.App.4th 1078, 1087, 54 Cal. Rptr.3d 847. Under the provisions of the trust agreement, the trustees retained discretion in determining how to provide for future liabilities and obligations and when those liabilities had been discharged.[2] (Trust Agreement, Exh. A to SATC §§ 5.4, 5.7). Third-party plaintiffs must therefore allege facts that suggest Ellis used his discretion with respect to administering the trust in a manner that harmed the beneficiaries.

The facts alleged in the SATC demonstrate that Ellis used his discretion as a trustee to act in ways that benefitted the GERIT beneficiaries and therefore do not constitute a breach of fiduciary duty as a matter of law. On April 29, 1996, the RWQCB finalized Order No. 96–052, stating that the risk of contamination of the

---

2. "The Trustees may, in their discretion, make reasonable provision by reserve or otherwise ... for such amount as the Trustees in good faith may reasonably determine to be necessary to meet present or future claims and liabilities of the trust." (Trust Agreement, Exh. A to SATC § 5.4); "If the trustees determine that all claims, debts, liabilities, and obligations of the Liquidating Trust have been paid or discharged ... or if the existence of the Liquidating Trust shall terminate[,] ... the Trustees shall, as expeditiously as is consistent with the conservation and protection of the Liquidating Trust Estate, distribute [the estate] to the Beneficiaries." (Trust Agreement, Exh. A to SATC § 5.7)

deeper aquifer was "negligible" and that "adequate source removal has been accomplished." (Exh. E to SATC at 9). Further, in March 1996, GERIT and third-party plaintiffs had contracted with a consultant company to carry out all activities required to clean up the Site pursuant to Order No. 96–052 for a firm fixed price. (Exh. F to SATC at 2). Ellis therefore had a good faith reason to believe that GERIT's environmental obligations had been paid for and that there was little possibility of future cleanup costs, and was within his duties as a trustee in determining that the trust's liability for the contamination had been discharged.

Having determined that the trust's obligations had been discharged, Ellis was under a fiduciary duty, as stated in the Trust Agreement, to distribute the assets of the trust to the beneficiaries "expeditiously." (Trust Agreement, Exh. A to SATC § 5.7). He distributed the proceeds of the sale of the property and terminated GERIT in December 1997, SATC ¶ 37, over a year and a half after the letter from the RWQCB stating that "no further action ... is required." (April 29, 1996 RWQCB Letter, Exh. G to SATC). Neither Ellis' distribution of the trust assets nor his failure to keep a reserve or restore the trust has resulted in any apparent harm to the beneficiaries of GERIT; indeed, the beneficiaries have only benefitted from receiving and retaining the entirety of the trust proceeds.

Further, third-party plaintiffs allege that Ellis breached his fiduciary duty by incorrectly using a "term of art" in an SEC filing when he called Order No. 96–052 a "No Further Action Letter." SATC ¶¶ 33, 34, 48. The SATC claims that this conduct was designed to obtain "intentionally misrepresented environmental clearances" that purportedly helped Ellis rush the sale of the property. SATC ¶ 49. It does not state what "environmental clear-ances" Ellis fraudulently obtained by incorrectly calling the RWQCB letter a "No Further Action Letter," nor why such a misrepresentation "also constituted a breach of Ellis' fiduciary duties to GERIT." SATC ¶¶ 48–49, see also Opp. at 7.

The documents incorporated by reference to the SATC show that third-party plaintiffs' allegations do not constitute a plausible breach of fiduciary duty by Ellis when he called Order No. 96–052 a "No Further Action Letter." The letter in fact states that "no further action ... is required," (April 29, 1996 RWQCB Letter, Exh. G to SATC), and while third-party plaintiffs allege that this "term of art" generally means that a site is closed, Ellis' statement to the SEC in GERIT's 10–Q filing does not qualitatively misrepresent the status of the Site. (Exh. H to SATC). Even if the "No Further Action Letter" is a "term of art" with a specific meaning, which third-party plaintiffs have failed to establish in the first place, Ellis provided other information in the 10–Q that makes clear he intended no misrepresentation by his use of the term. Further, third-party plaintiffs have not made clear how such an alleged misrepresentation to the SEC regarding the status of the Site harmed the beneficiaries of GERIT. For the foregoing reasons, third-party plaintiffs fail to allege that Ellis ever acted in a capacity other than that of a fiduciary and fail to allege facts sufficient to establish the potential for personal liability under 42 U.S.C. § 9607(n)(7)(A).

■ Third-party plaintiffs also ignore the safe harbor provision of 42 U.S.C. § 9607(n)(4)(C), which states that "a fiduciary shall not be liable in its personal capacity under this chapter for ... terminating the fiduciary relationship." The SATC alleges that Ellis "positioned GERIT so that he could liquidate and terminate it as quickly as possible," SATC ¶ 48, and

that he did so in December 1997, SATC ¶ 49. Further, third-party plaintiffs allege that

> "Ellis' termination of GERIT was a breach of his fiduciary duties because not all of GERIT's obligations had been discharged. Further, Ellis benefitted from this personally because he was no longer saddled with having legal title to a contaminated property or being trustee of an entity responsible to the RWQCB for ongoing environmental obligations."

SATC ¶ 37. This alleges no more than Ellis terminating the fiduciary relationship, no matter the ostensible reason. The safe harbor provision, to the extent third-party plaintiffs rely on Ellis' liquidating the trust as an act in breach of his fiduciary duty, protects Ellis from personal liability.

### III. *Fiduciary Negligence Exception*

■ Under the second exception proffered by third-party plaintiffs, "if negligence of a fiduciary causes or contributed to the release or threatened release" of hazardous substances, the fiduciary may be personally liable. 42 U.S.C. § 9607(n)(3). According to the Eleventh Circuit, "[t]o gain the benefit of the negligence exception, [third-party plaintiffs] must present evidence that [Ellis] took particular negligent actions that caused or contributed to the release of hazardous substances." *Canadyne–Georgia,* 183 F.3d at 1275. The court further explained that CERCLA imposes no duty to prevent others from releasing hazardous substances, and it held that the defendant "could not have been negligent in failing to prevent others from polluting."

Paragraph 51 of the SATC states,

"Ellis, through his company, EPI, failed to adequately address the shallow groundwater contamination, which led to the migration of the plume outside of the Containment Zone and PCE release and contamination of the deep aquifer. The deep aquifer contamination is a result of the shallow groundwater contamination that was not properly taken care of by EPI pursuant to the 1994 settlement."

In order to state a plausible claim for relief, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. While this allegation is indeed more detailed than the bald statement of liability under section 9607(n)(3) contained in the FATC,[3] it fails to sufficiently allege that Ellis was negligent as described in that section.

The SATC states only a conclusory allegation of a failure to act (i.e., "EPI[ ] failed to adequately address the ... contamination ... that was not properly taken care of by EPI"), not "particular negligent actions that caused or contributed to the release of hazardous substances." *See Canadyne–Georgia,* 183 F.3d at 1275. Further, even if this allegation were sufficiently particular as to affirmative actions contributing to the release of hazardous substances, it fails to allege that Ellis was in any way personally involved in mismanagement of the Site by EPI. The Asset Conservation Act requires the *direct negligence of a fiduciary* that causes or contributes to contamination under CERCLA; vicarious liability or imputed negligence is not enough to impose personal liability on a fiduciary. *See id.,* n. 10.

---

**3.** Paragraph 36 of the FATC states, "Harold A. Ellis, Jr. is also personally liable under 42 U.S.C. § 9607(n)(3) for his negligence which caused or contributed to the release or threatened release of PCE." The FATC nowhere alleges any particular actions taken by Ellis that led to the release of PCE.

"Just because under state partnership law a partnership and its partners may be vicariously liable for the negligence of any one partner or employee of the partnership does not mean every partner herself negligently caused the accident. 'Vicarious liability,' or 'imputed negligence,' is not the same as saying 'negligence of a fiduciary cause[d] or contribute[d] to the release,' as required under the Asset Conservation Act."

*Id.* Alleging that the EPI partnership, Ellis among the partners, was negligent in causing or contributing to the release of hazardous substances is not the same as alleging that Ellis was negligent as a fiduciary. Since the SATC fails to allege any individual negligence by Ellis that caused or contributed to the release of hazardous substances, Ellis is not personally liable for the CERCLA recovery costs under section 9607(n)(3).

Because Ellis involvement in the PCE contamination, investigation and remediation was limited to his role as co-trustee of GERIT, he is not personally liable for recovery costs under CERCLA. The SATC has not plausibly alleged that any of the exceptions to CERCLA's fiduciary exemption from personal liability apply, and accordingly third-party plaintiffs have not established that Ellis's personal assets can be reached through the Revocable Family Trust. All of third-party plaintiffs' claims flow from Ellis' CERCLA liability, and the court dismisses the third-party complaint, in its entirety, with prejudice.

*CONCLUSION*

For the foregoing reasons, Trustee Evers' motion to dismiss the SATC is GRANTED with prejudice.

IT IS SO ORDERED.