### FLORIDA POWER & LIGHT CO., Plaintiff–Appellant,

v.

### ALLIS CHALMERS CORP., Central Moloney, Inc., General Electric Co., Kuhlman Electric Co., McGraw Edison, Inc., et al., Defendants–Appellees.

No. 94–4834.

United States Court of Appeals, Eleventh Circuit.

June 25, 1996.

**1516**

R. Hugh Lumpkin, Keith, Mack, Lewis, Cohen & Lumpkin, Miami, FL, William M. Martin, Peterson, Bernard, Vandenberg, Zei, Geisler & Martin, Fort Lauderdale, FL, for Pepper's Steel and Alloys, Inc. and Norton Bloom.

Norman A. Coll, Harris C. Siskind, Coll, Davidson, Carter, Smith, Salter & Barkett, Miami, FL, for Florida Power & Light Co.

R. Benjamine Reid, Paul L. Nettleton, Popham, Haik, Schnobrich & Kaufman, Ltd., Miami, FL, for Westinghouse Electric.

Jay M. Levy, Jay M. Levy, P.A., Miami, FL, for Allis Chalmers Corporation.

Herbert G. Sparrow, III, Detroit, MI, Maxine M. Long, Richard M. Lesile, Miami, FL, for Kuhlman Electric.

Thomas M. Burke, Chris N. Kolos, Lavinia K. Dierking, Edward L. White, III, Orlando, FL, for General Electric.

James M. Porter, Miami, FL, for McGraw Edison, Inc.

Richard Fred Lewis, Miami, FL, for RTE Corporation.

Andrew V. Showen, Christopher C. Skambis, Foley & Lardner, Orlando, FL, for Central Moloney.

Before HATCHETT and BLACK, Circuit Judges, and CLARK, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case involving the liability of companies handling electrical transformers contaminated with a hazardous substance, under the Comprehensive Environmental Response Compensation and Liability Act of 1990 (CERCLA), we affirm the district court.

## FACTS

For more than forty years, Westinghouse Electric Corporation, General Electric Company, Allis–Chalmers Corporation, Central Moloney, Inc., Kuhlman Electric Company, McGraw Edison, Inc., and Wagner Electric Corporation (hereinafter "the manufacturers") sold Florida Power and Light (FP & L) oil-filled electrical transformers for use in its utility business. Unbeknownst to FP & L, the mineral oil contained in these transformers became contaminated with a hazardous substance known as polychlorinated biphenyls (PCBs) during the manufacturing process. FP & L, at the end of the transformers' useful life, resold these transformers to Pepper's Steel and Alloys, Inc. (Pepper's Steel) as scrap metal. During the salvaging process, Pepper's Steel released significant quantities of the mineral oil from the transformers onto the ground. As a result, the Pepper's Steel site and surrounding environment became contaminated with PCBs.

On November 22, 1976, Westinghouse sent FP & L a letter informing FP & L that some of the transformers it purchased possibly contained PCBs in the mineral oil. Approximately six months later, General Electric sent FP & L a letter also informing FP & L that the transformers it purchased could contain PCB-contaminated mineral oil. Both letters warned FP & L that PCBs accumulate in the environment and that FP & L should take the appropriate environmental precautions when disposing of the transformers. Despite the receipt of both letters, FP & L failed to inform Pepper's Steel of the potential contamination problem. FP & L, however, continued to sell transformers to Pepper's Steel as scrap metal.

On May 10, 1977, Pepper's Steel learned that its site contained PCBs and other hazardous substances. On October 4, 1977, Pepper's Steel sent FP & L a letter informing FP & L that it believed that some of the transformers it purchased from FP & L contained mineral oil contaminated with PCBs. FP & L, shortly thereafter, tested the mineral oil in its transformers and discovered the oil contained PCBs. For several months following the discovery of PCBs on the Pepper's Steel site, Pepper's Steel refused to accept transformers from FP & L. Pepper's Steel subsequently resumed purchasing transformers from FP & L, but only after FP & L drained the mineral oil from the transformers. Despite this preventive measure, the contamination of the Pepper's Steel site worsened.

In July 1993, the Environmental Protection Agency (EPA) and the Florida Department of Environmental Regulations (DER) brought emergency environmental cleanup actions against Pepper's Steel, FP & L, and other owners of that site for unacceptable levels of PCBs, lead, arsenic, and antimony in violation of the Comprehensive Environmental Response Compensation and Liability Act of 1990 (CERCLA). In March 1985, the EPA filed another lawsuit against the same parties seeking to recover the response costs EPA incurred as a result of its investigation and removal of the hazardous substances. On May 26, 1987, FP & L entered into a consent decree with EPA agreeing to reimburse EPA and DER for response and oversight costs relating to the cleanup of the Pepper's Steel site. In the consent decree, FP & L reserved its right to seek reimbursement from third persons also liable under CERCLA.

## PROCEDURAL HISTORY

On July 18, 1986, FP & L filed this action against the manufacturers seeking reimbursement under 42 U.S.C. § 9607(a)(3) of CERCLA for costs it incurred in the Pepper's Steel cleanup based on a claim of contribution. In its complaint, FP & L also asserted state law restitution, indemnity, negligence, breach of contract, breach of warranty, negligent misrepresentation, and strict liability claims. On March 21, 1988, the district court granted partial summary judgment in favor of the manufacturers on FP & L's contribution claim. In a prior appeal filed pursuant to 28 U.S.C. § 1292(b), this court affirmed the district court's grant of partial summary judgment holding that a mere sale of a useful product without additional evidence that the transaction included an arrangement for the disposal of the hazardous substance does not subject the manufacturers to liability under CERCLA.

On remand, the district court entered a second partial summary judgment in favor of the manufacturers on FP & L's negligence, breach of contract, breach of warranty, negligent misrepresentation, and strict liability claims finding that the applicable Florida statute of limitations barred those claims. On April 9, 1990, the district court granted summary judgment in favor of the manufacturers on FP & L's remaining claims of restitution and indemnity. FP & L thereafter filed a motion for leave to amend its complaint seeking to add a claim for contribution under a different provision of CERCLA than previously considered in the prior appeal. The district court on June 19, 1990, denied FP & L's motion for leave to amend. FP & L also filed a motion for default judgment against Westinghouse alleging that it withheld evidence of an "arrangement of disposal" during discovery. On January 31, 1990, the district court adopted the magistrate judge's report and recommendation denying FP & L's motion for a default judgment.

FP & L filed this appeal seeking review of the district court's grant of summary judgment in favor of the manufacturers on its restitution, indemnity, and state law claims. FP & L also appeals the district court's denial of its motions for leave to amend and for default judgment.

## CONTENTIONS

FP & L contends that the district court erred in ruling that the statute of limitations began to run on its state law tort and contract claims in 1977 when FP & L learned that its transformers contained PCB-contaminated mineral oil. Instead, FP & L asserts

that the statute of limitations did not commence to run until 1983, the time it first incurred cleanup cost under CERCLA for PCB contamination resulting from the mineral oil in the transformers. FP & L also contends CERCLA imposes a legal duty on the manufacturers to pay for the cleanup at the Pepper's Steel site. Specifically, FP & L asserts that the record, when considered in a light most favorable to FP & L, demonstrates that the manufacturers "otherwise arranged for disposal" of PCBs. FP & L further contends that the district court erred in finding that granting its motion for leave to amend its complaint to add an additional claim would have been futile. Finally, FP & L contends that the district court erred in failing to enter a default judgment against Westinghouse for withholding documents during discovery, asserting that only a default judgment could eliminate the severe prejudice it suffered from Westinghouse's actions.

In response, the manufacturers contend that the statute of limitations commenced to run in 1977 on FP & L's state law tort and contract claims when FP & L learned that its transformers contained PCB-contaminated oil and began incurring costs to test and drain the contaminated mineral oil from the transformers. The manufacturers also contend that they received no benefit from FP & L's expenditures in the cleanup of the Pepper's Steel site because they had no legal duty under CERCLA to pay for the cleanup. Finally, Westinghouse contends that the district court did not abuse its discretion in denying FP & L's motions for leave to amend or for default judgment.

## ISSUES

We discuss the following issues: (1) whether the statute of limitations bars FP & L's state law tort and contract claims; (2) whether CERCLA imposes a legal duty upon appellees to reimburse FP & L for costs it incurred in the cleanup of the Pepper's Steel site; (3) whether the district court properly found that granting FP & L's motion to amend its complaint to add an additional contribution claim under CERCLA would have been futile; and (4) whether the district

court abused its discretion in denying FP & L's motion for default judgment.

## DISCUSSION

### A. Summary Judgment

We review the district court's grant of summary judgment de novo. Canadyne–Georgia Corp. v. Continental Ins. Co., 999 F.2d 1547, 1554 (11th Cir.1993). Where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case, the district court granted summary judgment in favor of the manufacturers on FP & L's state law tort, contract, restitution, and indemnity claims. We first address whether the statute of limitations bars FP & L's state law tort and contract claims.

### 1. Statute of Limitations

■ Under Florida law, the statutes of limitations begin to run at the time the cause of action accrues. Fla.Stat.Ann. § 95.031 (West 1982). A cause of action accrues when the last element constituting the cause of action occurs and the plaintiff knew or should have discovered the injury. City of Miami v. Brooks, 70 So.2d 306, 309 (Fla.1954). In its complaint, FP & L asserted state tort and contract claims. Florida law imposes a four-year statute of limitations on tort claims and a five-year statute of limitations on contract claims based on a written contract. See Fla. Stat.Ann. §§ 95.11(2)(b) and (2)(a), (f), (j), (k), (p) (West 1982). In this case, the district court found that FP & L knew or should have known that it had viable tort and contract claims against the manufacturers in 1977 when it received Westinghouse's and General Electric's letters warning it of the PCB contamination problem and the test results revealing the presence of PCBs in its transformers.

■ FP & L argues that a question of material fact exists as to whether Westinghouse's and General Electric's letters and its knowledge that some of its transformers tested positive for PCBs gave it sufficient

notice that the reselling of the transformers as scrap metal would subject it to response and cleanup costs for the cleanup of the Pepper's Steel site under CERCLA. Specifically, FP & L asserts that it could not have commenced an action in 1977 seeking to recover response costs and remedial expenses for the cleanup because Congress did not enact CERCLA until 1980 and because it did not begin to sustain such damages until 1983. In response, the manufacturers argue that the fact that FP & L did not know the full extent of its injury at the time it learned of its PCB contamination problem or that the most substantial damages did not occur until a later date does not postpone the running of the statute of limitations on its state law claims. We agree.

■ A cause of action accrues under Florida law the moment the injured party or a reasonable person in the injured party's situation knew or should have known that the acts complained of caused damage. *Penthouse North Ass'n v. Lombardi*, 461 So.2d 1350, 1352 (Fla.1985). In this case, FP & L asserts tort and contract claims against the manufacturers based on the presence of PCBs in its transformers. FP & L, however, had actual knowledge in 1977 that its transformers contained PCBs and that PCBs accumulate in the environment. Also in 1977, FP & L sustained at least nominal damages due to the testing and draining of the contaminated mineral oil from its transformers. Based on these facts, FP & L could have filed state tort and contract claims against the manufacturers at that time. Florida law subjects FP & L's state law claims either to a four- or five-year statute of limitations. FP & L, however, filed its state law claim in 1986 nine years after it became legally damaged. Once the appropriate statute of limitations period has passed, manufacturers, like individuals, "have the right to conduct their affairs without fear of liability for their [past] actions." *Penthouse North Ass'n*, 461 So.2d at 1352. Because FP & L filed its state law claims after the running of the statute of limitations, we affirm the district court's grant of summary judgment on FP & L's tort and contract claims.

**2. State Law Restitution and Indemnity Claims**

We now turn to FP & L's state law claims of restitution and indemnity based on the manufacturers' alleged duty under CERCLA. *See Tipper v. Great Lakes Chemical Co.*, 281 So.2d 10, 12–13 (Fla.1973) (plaintiff entitled to restitution when benefit conferred on another was necessary for the protection of the interests of third persons); *see also Mortgage Guarantee Ins. Corp. v. Stewart*, 427 So.2d 776, 778–79 (Fla.3d D.C.A.1983) (plaintiff entitled to indemnity when plaintiff discharges a duty he owes but should have been paid by another).

This court previously noted that one of the, if not the, "essential purpose of CERCLA is to place the ultimate responsibility for the cleanup of hazardous waste on 'those responsible for problems caused by the disposal of chemical poison.'" *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1317 (11th Cir.1990) (quoting *United States v. Aceto Agric. Chemicals Corp.*, 872 F.2d 1373, 1377 (8th Cir.1989)). CERCLA, for example, imposes liability on

(1) the owners and operators of a facility at which a release or threatened release of hazardous substances exists; (2) the owners or operators of such a facility any time in the past when hazardous substances were disposed of; (3) any person or entity who "arranged for" the treatment or disposal of a hazardous substance at the facility; and (4) any persons who transport hazardous substances to the facility.

*Florida Power & Light Co.*, 893 F.2d at 1317.

■ In this case, FP & L argues that the manufacturers "arranged for" the disposal of hazardous substances on the Pepper's Steel site and therefore CERCLA imposes a duty on the manufacturers. Specifically, CERCLA places such a duty on

any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances....

42 U.S.C.A. § 9607(a)(3) (West 1995). FP & L, however, has presented no evidence that the manufacturers had any involvement with FP & L's decision to resell the used transformers as scrap metal to Pepper's Steel or that the manufacturers otherwise arranged for FP & L's disposal of the contaminated transformer oil. This court in FP & L's prior appeal held that a mere sale of a useful product without more could not subject manufacturers to liability under CERCLA for "arranging disposal." *Florida Power & Light*, 893 F.2d at 1318. Because FP & L has not met its burden of demonstrating that the manufacturers' transactions with FP & L involved anything more than mere sales, the manufacturers owe no duty under CERCLA to clean up the Pepper's Steel site.

■ Although this court rendered its decision in the prior appeal based upon the district court's grant of summary judgment on FP & L's CERCLA contribution claim, our holding in the prior appeal equally applies to FP & L's state law restitution and indemnity claims because contribution, indemnity, and restitution require the plaintiff to first demonstrate that the defendant received a benefit from the plaintiff's actions—i.e., that plaintiff paid more than his fair share, or that the plaintiff discharged a duty the defendant owed, or that the plaintiff's actions unjustly enriched the defendant. In this case, FP & L cannot demonstrate that it conferred a benefit on the manufacturers when it paid for cleanup cost of the Pepper's Steel site because the manufacturers had no duty under CERCLA to assist in the cleanup. Consequently, FP & L's state law restitution and indemnity claims fail as a matter of law. Accordingly, we affirm the district court's grant of summary judgment on the restitution and indemnity claims.*

**B. Motion to Amend**

■ We review the district court's denial of FP & L's motion for leave to amend its complaint for abuse of discretion. *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 406 (11th Cir.1989). Federal Rule of Civil Procedure 15(a) mandates that the district court freely grant plaintiff's motion for leave when justice so requires. Fed.R.Civ.P. 15(a). "[U]nless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner*, 868 F.2d at 407.

■ In this case, FP & L filed a motion for leave to amend its complaint seeking to add an additional claim for contribution under section 9607(a)(1) and (a)(2) asserting that the manufacturers are liable under CERCLA as "owners of a 'facility.'" The district court denied FP & L's motion for leave to amend as futile finding that the contribution claim would not withstand a motion to dismiss. On appeal, FP & L contends that the district court's denial of its motion to amend constitutes an abuse of discretion. FP & L argues that a contribution claim under section 9607(a)(1) and (a)(2) states a valid claim upon which relief could be granted. FP & L further argues that CERCLA imposes liability on the manufacturers because they owned the transformers—the "facility"—when they filled the transformers with the PCB-contaminated mineral oil.

CERCLA defines a "facility" as follows:

The term "facility" means (A) any building, structure, installation, equipment, pipe or pipeline ..., well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located....

42 U.S.C.A. § 9601(9) (West 1995). Even accepting FP & L's argument that the electrical transformer constitutes a "facility" for purposes of CERCLA, FP & L's contribution claim fails because Pepper's Steel and not the manufacturers owned the transformers at the time the PCB-contaminated oil was released from the "facility." Because the manufacturers retained no property interest in the transformers at the time the transformer oil contaminated the Pepper's Steel site, CERCLA does not subject the manufac-

---

* We emphasize that our holding does not recognize implied claims of restitution and indemnity under CERCLA. FP & L's claims of restitution and indemnity arose under state law and not CERCLA, although the alleged duty to clean up the Pepper's Steel site arose under CERCLA.

 

turers to liability under section 9067(a)(1) and (a)(2). Accordingly, we affirm the district court's decision to deny FP & L's motion for leave to amend as futile.

### C. Motion for Default Judgment

■ Finally, FP & L contends that the district court erred in failing to enter a default judgment against Westinghouse for withholding documents for seventeen months during discovery. The district court entered a June 1988 order to compel directing Westinghouse to produce this discovery. The order, however, did not require production within any particular time period. As a result, Westinghouse produced the discovery in October and November 1989. After Westinghouse produced this discovery, FP & L filed a motion for default judgment. The district court denied FP & L's motion finding that Westinghouse's discovery delay was no more egregious than FP & L's actions during discovery.

■ District courts have broad discretion under the Federal Rules of Civil Procedure to impose sanctions for failure to comply with court orders. *Wouters v. Martin County,* 9 F.3d 924, 933 (11th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 65, 130 L.Ed.2d 21 (1994). FP & L urges this court to reverse the district court's decision arguing that only a default judgment could eliminate the prejudice it suffered from Westinghouse's actions. With the documents in question, FP & L sought to prove that Westinghouse intentionally filled mineral oil transformers with mineral oil containing PCBs as a method for eliminating PCBs from its oil storage tanks. FP & L argues that Westinghouse's action constitutes an arrangement for disposal under CERCLA. We note that only one of the documents produced during this period supports FP & L's allegation that Westinghouse intentionally filled transformers with contaminated oil. This document is an unauthored draft containing a number of alternative plans for reducing the concentration of PCBs in mineral oil in the Westinghouse Sharon, Pennsylvania plant. It is undisputed that Westinghouse did not adopt or implement any of the alternative plans listed in that document. We therefore conclude that the district court did not abuse its dis-

cretion in denying FP & L's motion for default judgment.

### CONCLUSION

For the reasons stated above, we hold that the district court properly granted summary judgment in favor of the manufacturers on FP & L's state law, restitution, and indemnity claims. We also hold that the district court did not abuse its discretion in denying FP & L's motion for leave to amend and motion for default judgment. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.