[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 25 2000
THOMAS K. KAHN
CLERK

_____

No. 99-11372

_____

D. C. Docket No. 96-01511-CV-J-NW

MONARCH TILE, INC.,

Plaintiff-Appellant,

versus

THE CITY OF FLORENCE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(May 25, 2000)**

Before ANDERSON, Chief Judge, BLACK, Circuit Judge, and HALL*, Senior
Circuit Judge.

HALL, Senior Circuit Judge:

---

* Honorable Cynthia Holcomb Hall, Senior U.S. Circuit Judge for the Ninth Circuit, sitting
by designation.

The instant case requires us to determine whether a governmental body that acquires indicia of ownership in a property for the purpose of fostering private economic development thereon, but which retains those indicia for the purpose of securing repayment of the development bonds that financed the property's acquisition, can qualify for the Comprehensive Environmental Response, Compensation, and Liability Act's ("CERCLA's") "secured creditor" liability exception, 42 U.S.C. § 9601(20)(A). Because we hold that such a governmental body can qualify for the secured creditor exception, we affirm the judgment of the district court.

I.

Appellee, the City of Florence, is a municipal corporation organized under the laws of Alabama. In 1952, Appellee purchased a parcel of land and leased it to Stylon, a corporation wishing to construct and operate a ceramic tile manufacturing factory on said parcel. Appellee acquired the property for the purpose of encouraging industrial development within the county. By purchasing the property and leasing it to a factory operator, that factory operator would benefit from certain tax savings that could be passed along through Appellee. Appellee issued bonds to finance the purchase of the parcel and mortgaged the parcel to First National Bank of Florence ("Trustee"), pledging that Stylon's rent payments from the property

2

would be used to secure the repayment of principal and interest on the bonds held by Trustee. Three years later, Appellee entered into a similar arrangement with respect to an adjoining property. Stylon operated a tile manufacturing facility at the property until its bankruptcy in 1973. From 1973 to 1988 Appellant, Monarch Tile, Inc., leased the property in question from Appellee, with Appellee retaining title.[1] In 1988 Appellant purchased the two parcels from Appellee and a related municipal body for approximately $60,000.

From 1953 to 1973 Stylon discharged substances that are hazardous within the meaning of § 101(14) of CERCLA, 42 U.S.C. § 9601(14). The discharge of these substances left the property and the neighboring watershed significantly contaminated. Appellant's activities further contaminated the property, although Appellant apparently was not responsible for most of the pollution. Appellant first discovered some levels of contamination on the property in 1987, but apparently did not come to realize the full scope of the problem until several years later. Upon learning of the contamination, Appellant notified the Environmental

---

[1] The district court determined that Appellee held title to the property in question prior to 1988. In its opening brief, Appellant argued that Trustee held title to the property and Appellee held only an equity of redemption. We need not address this academic, state-law dispute in order to resolve the instant case. As both parties correctly assume, regardless of who held actual title, Appellee held indicia of ownership during the period in question, which suffices to engender potential CERCLA liability. And we do not read CERCLA's definition of "security interest," which is codified in 42 U.S.C. §901(G)(vi), to exclude an equity of redemption. In this opinion, we therefore refer to Appellee as having "held title."

3

Protection Agency, and was directed to clean up the facility under CERCLA. Appellant brought suit against Appellee, alleging that Appellee owes Appellant contribution under CERCLA, 42 U.S.C. § 9613(f), which provides that prior owners can be financially responsible to subsequent owners who must bear the costs of cleaning up contaminated facilities.

The district court granted summary judgment in Appellee's favor, holding that Appellee was exempted from liability under 42 U.S.C. § 9601(20)(A), which exempts from CERCLA liability any person who, without participating in the management of the facility, holds indicia of ownership primarily to protect security interests in the vessel or facility. Appellant filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1291, and review the district court's grant of summary judgment de novo. See Chapman v. Klemnick, 3 F.3d 1508, 1509 (11th Cir. 1993).

II.

CERCLA is a broad, remedial statute animated by a sweeping purpose to ensure that those responsible for contaminating American soil shoulder the costs of undoing that environmental damage. See Uniroyal Chem. Co. v. Deltech Corp., 160 F.3d 238, 257 (5th Cir. 1998); AT&T v. Compagnie Bruxelles Lambert, 94

F.3d 586, 591 (9th Cir. 1996). "An essential purpose of CERCLA is to place the ultimate responsibility for the clean-up of hazardous waste on those responsible for problems caused by the disposal of chemical poison." Florida Power & Light Co. v. Allis Chalmers Corp., 893 F.2d 1313, 1317 (11th Cir. 1990) (internal quotations omitted). "CERCLA holds the owner or operator of a facility containing hazardous waste strictly liable to the United States for expenses incurred in responding to the environmental and health hazards posed by the waste in that facility." United States v. Fleet Factors Corp., 901 F.2d 1550, 1554 (11th Cir. 1990).[2] The terms "owner" and "operator" do not have any special meaning under CERCLA, but are to be given their "ordinary meanings." Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1498 (11th Cir. 1996).

---

[2] While much of Fleet Factors' reasoning and holding remain intact, Congress has abrogated the part of Fleet Factors' holding that deals with the liability of lenders who participate in the management of properties operated by polluting firms. Fleet Factors held that lenders and other parties who participated "in the financial management of a facility to a degree indicating a capacity to influence the corporation's treatment of hazardous wastes" could be liable for cleaning up pollution created by an operator's activities. Largely in response to the perceived overbreadth of the Fleet Factors rule, Congress amended CERCLA in 1996, narrowing somewhat the sweep of lender liability under CERCLA. See, e.g., 42 U.S.C. § 9601(F)(i)(II) (noting that the term "participate in management" does not include "merely having the capacity to influence . . . facility operations."); Joanne S. Liu, Lender Liability Protection in the Aftermath of CERCLA's Security Interest Exemption Crisis: Treating Lenders Like Lenders, 17 Ann. Rev. Banking L. 575, 598 (1998) ("In effect, the new law directly negates the Fleet Factors management-participation theory of liability: mere capability to influence the decision-making of the borrower's financial management is insufficient to invoke CERCLA liability for clean-up costs."); Lisa G. Dwyer, Note, Relief from CERCLA's 'Rock and a Hard Place': The Asset Conservation, Lender Liability and Deposit Insurance Protection Act, 3 Envtl. Law. 859, 866 (1997) (noting that the Act's definition of "'participation in management' . . . specifically rejects the Eleventh Circuit's definition in Fleet Factors.").

CERCLA contains a smattering of exceptions to this broad liability for owners, one of which is the "secured creditor" exception carved out in 42 U.S.C. § 9601(20)(A). The last sentence of that subsection states that the term "owner or operator" does not "include a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility." That clause is very much at issue in this case. Appellant argues that the district court erroneously held that Appellee could qualify for this exception. Appellee, not surprisingly, sees it the other way. In the instant case, Appellee had the burden of establishing its entitlement to that exemption. See Fleet Factors, 901 F.2d at 1555. And it is undisputed that Appellee did not participate in the management of the facility. Therefore, in order to prevail on its appeal, Appellant must show that Appellee failed to prove that Appellee held indicia of ownership primarily to protect its security interest.

In determining whether Appellee met its burden of proving that it qualifies for the exception, the district court relied heavily on the Ninth Circuit's opinion in In re Bergsoe Metal Corp., 910 F.2d 668 (9th Cir. 1990). The Bergsoe court confronted facts virtually identical to those before us today. The Port of St. Helens, a municipal corporation in Oregon, issued bonds for the economic development of the St. Helens area. The Port sold 50 acres of land to Bergsoe,

6

upon which Bergsoe operated a lead recycling plant. Bergsoe gave the Port a promissory note and a mortgage on the property. See id. at 669-70. Like the present transactions, the Bergsoe transactions involved a commercial bank as an intermediary. The bank purchased the Port's revenue bonds and, in exchange, the Port assigned to the bank "all its rights under, and revenues to be generated from, the leases." Id. at 670. Although the Port all the while retained title to the property, the Court found the Port not liable under CERCLA because it held indicia of ownership primarily to protect a security interest. The Court emphasized that "the leases give to Bergsoe all other traditional indicia of ownership, such as responsibility for the payment of taxes and for the purchase of insurance," as well as "the risk of loss from destruction or damage to the property," and that Bergsoe's rent "was equal to the principal and interest due under the bonds." Id. at 671. The First Circuit in Waterville Industries, Inc. v. Finance Authority of Maine, 984 F.2d 549 (1st Cir. 1993), employing similar reasoning, adopted a rule in accordance with Bergsoe. See id. at 553.

Appellant's effort to distinguish Bergsoe is unconvincing. Appellant correctly points out that the 1996 amendments to CERCLA introduced a new definition of the term "security interest." The new definition is as follows:

> The term "security interest" includes a right under a mortgage, deed of trust, assignment, judgment lien, pledge, security agreement, factoring

7

agreement, or lease and any other right accruing to a person to secure the repayment of money, the performance of a duty, or any other obligation by a nonaffiliated person.

42 U.S.C. § 9601(20)(G)(vi).  Appellant argues that Appellee did not "hold" a security interest, but rather "gave" a security interest to Trustee.  The Bergsoe court adequately dealt with this objection.  It held that where a party held bare title, and devoted the lease revenues to pay off the development bonds that had financed the property's acquisition, the party held a "security interest" within the meaning of § 9601(A)(20).  There is nothing in the 1996 amendments suggesting that Congress sought to constrain the definition of a "security interest" so as to preclude the type of security interest identified in Bergsoe.  To the contrary, it appears that the amendment's broad language "any other right accruing to a person to secure the repayment of money . . . or any other obligation" encompasses the activity occurring here.  We therefore view the type of "security interest" identified in Bergsoe as having survived the enactment of 42 U.S.C. § 9601(G)(vi).

Appellant's heavy reliance on In re Martin Brothers Toolmakers, Inc., 796 F.2d 1435 (11th Cir. 1986), is misplaced.  That case was a bankruptcy case, where the court had to determine whether, under Alabama law, the financial document from which the parties' relationship stemmed amounted to a lease or a mortgage. See id. at 1436.  In the Martin Brothers bankruptcy litigation, such a determination

8

had real significance.  In the case at bar, it would be entirely irrelevant, since both mortgages and leases are identified as "security interests" by the explicit language of 42 U.S.C. § 9601(G)(vi).  Similarly, in <u>Martin Brothers</u>, the court's inquiry was framed by Alabama state law provisions that differentiate between a lease and a security interest.  <u>See</u> 796 F.2d at 1438 n.5.  But in enacting 42 U.S.C. § 9601(G)(vi), Congress explicitly rejected any such differentiation for the purposes of CERCLA.  We therefore view the language of CERCLA and the explicit consideration given by the <u>Bergsoe</u> court as far more instructive than any lessons to be culled from a bankruptcy dispute that arose in a far different context and with a far different statutory framework.

Appellant also argues that the fact that Alabama law limited Appellee to purchasing the property in question for a public purpose (the development of industry within the county) precludes Appellee from arguing that it held title to the property primarily to protect a security interest.  The district court rejected this contention by noting that Appellee indeed acquired the property to spur industrial development, but subsequently held title to ensure that Appellee's bonds, held by Trustee, were backed by adequate security.  The district court's analysis here was eminently sensible.  Plainly, governments will never acquire property for the purpose of protecting a security interest in that same property.  Governments

acquire property to further some public purpose, be it economic development, environmental protection, or flood control. Once those public purposes are met, however, as it was in this case when a tile manufacturing factory began operating on the property, the government often holds title or other indicia of ownership during the duration of a long-term lease so that it can ensure that its investment is repaid. The district court, recognizing this dynamic, drew a distinction between Appellee's motivations for <u>obtaining</u> and <u>retaining</u> the property. The district court's bifurcation was quite elegant in its simplicity, and we endorse it wholeheartedly. The fact that a government's initial motivation for purchasing land was to further economic development will not preclude it from qualifying for the secured creditor exception as long as it "holds indicia of ownership primarily to protect" its security interest in the property during the period when the pollution occurs.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.