### CANADYNE–GEORGIA, CORPORATION, Plaintiff,

v.

### BANK OF AMERICA, et al., Defendants.

No. 5:96–CV–114–1 (DF).

United States District Court, M.D. Georgia, Macon Division.

Aug. 13, 2001.

**1362**

Roger Allen Chalmers, John Clay Spinrad, Atlanta, GA, Walter H. Bush, Jr., Macon, GA, for plaintiff.

Michele L. Davis, Atlanta, GA, Hugh Brown McNatt, Vidalia, GA, Allen E. Lockerman, IV, David A. Sapp, Atlanta, GA, Mara McRae, Richard A. Horder, Valerie A. Nowell, W. Scott Laseter, Atlanta, GA, Douglas Sheppard Arnold, E. Peyton Nunez, Nill Toulme, Alston & Bird, Atlanta, GA, for defendants.

### ORDER

FITZPATRICK, District Judge.

This case is an action for declaratory and monetary relief pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C.A. § 9601 *et seq.* (West 1995 & Supp.2001); the Declaratory Judgment Act, 28 U.S.C.A. § 2201 *et seq.* (West 1994); the Georgia Hazardous Site Response Act ("HSRA"), O.C.G.A. § 12–8–90 *et seq.* (2001); and Georgia common law. The case is presently before the Court on Defendant Bank of America, N.A.'s (the "Bank") motion for summary judgment (tab # 215).

### I. Facts

From 1945 until 1972, the Fulton National Bank of America, now known as Bank of America, N.A., served as co-executor and later as co-trustee of the J.W. Woolfolk Trust. The assets of the Woolfolk Trust included a general partnership interest in Woolfolk Chemical Works, Ltd., ("WCW, Ltd."), a partnership that operated the Woolfolk pesticide manufacturing and formulating facility in Fort Valley, Georgia. During this time period, two independent partnerships operated the facility: WCW, Ltd. II, which was formed in 1945 and WCW, Ltd. III, which was formed in 1957. In 1977, Woolfolk Chemical Works, Inc. was sold in a stock transaction and its name became Canadyne–Georgia Corporation, the plaintiff in this action. On August 7, 1996, the bank resigned as trustee of the Woolfolk Trust and delivered the trust assets to new trustees.

Since 1990, under orders issued by the United States Environmental Protection Agency ("EPA"), Plaintiff has spent millions of dollars cleaning up contamination at the facility and in surrounding areas. In addition, Plaintiff has defended and resolved lawsuits filed by current and former residents of Fort Valley, Georgia, in which the residents claimed injury from hazardous substances released at the facility (the "Toxic Tort Litigation"). Plaintiff has brought this action seeking to hold the Bank and other allegedly responsible parties liable for costs that it has incurred.

The Bank previously moved to dismiss Plaintiff's claims under Rule 12(b)(6). The Eleventh Circuit reversed the Court's grant of that motion and reinstated all of Plaintiff's claims. *See Canadyne–Georgia Corp. v. NationsBank, N.A. (South),* 183 F.3d 1269 (11th Cir.1999). The Eleventh Circuit first noted that the Bank was an "owner" of the facility under Georgia law and for purposes of § 107(a) of CERCLA. *Id.* at 1273; *see also* 42 U.S.C.A. § 9607(a)(2) (imposing liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of"). The Eleventh Circuit next addressed the protections afforded fiduciaries from personal liability

under the Asset Conservation, Lender Liability, and Deposit Insurance Protection Act of 1996 (the "Asset Conservation Act"), 42 U.S.C.A. § 9607(n). Plaintiff asserted the applicability of the exception found in § 2502(n)(3) of the Asset Conservation Act.[1] Because of this negligence exception, the Eleventh Circuit denied the motion to dismiss, finding that Plaintiff had sufficiently alleged facts stating a claim under CERCLA. *Canadyne–Georgia Corp.*, 183 F.3d at 1276. In so doing, however, the Eleventh Circuit noted that "[t]o gain the benefit of the negligence exception, Canadyne must present evidence that the Bank took particular negligent actions that caused or contributed to the release of . hazardous substances. Here, the negligence exception requires some action because the Bank had no duty to prevent someone else from releasing hazardous substances." *Id.* at 1275. It is in this posture that the Court now addresses the Bank's motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Edwards v. Shalala*, 64 F.3d 601, 603 (11th Cir.1995). If the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to go beyond the pleadings and present specific

evidence giving rise to a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

In reviewing a motion for summary judgment, the court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *See Maynard v. Williams*, 72 F.3d 848, 851 (11th Cir.1996). Even if there exists some alleged factual dispute between the parties, summary judgment is not necessarily improper; there must be a genuine issue of material fact to render summary judgment improper. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Legal Analysis

Canadyne's claims are brought against the Bank in its individual capacity for liability incurred in its fiduciary role as trustee and executor of the J.W. Woolfolk Trust.[2] The Bank has moved for summary judgment on all claims.

### A. Comprehensive Environmental Response, Compensation, and Liability Act of 1980

■ Count I of Plaintiff's complaint is a claim for cost recovery under § 107(a) of CERCLA. Because Plaintiff is itself a responsible party under § 107, *see Canadyne–Georgia Corp. v. Cleveland*, 72 F.Supp.2d 1373, 1376 (M.D.Ga.1999), it is

---

**1.** Plaintiff also argued that the exception found in § 2502(n)(7) of the Asset Conservation Act was applicable. That subsection provides that the limitation on personal liability is not applicable when the fiduciary (1) "acts in a capacity other than that of a fiduciary," and (2) "in that capacity, directly or indirectly benefits from a trust or fiduciary relationship." 42 U.S.C.A. § 9607(n)(7)(A)(i), (ii). The Eleventh Circuit rejected Plaintiff's argument that the Bank's dual role as fiduciary

and lender brought it within this exception, noting that "we are confident Congress did not intend for the mere existence of a lending relationship to be enough to bring a fiduciary under this exception." *Canadyne–Georgia Corp.*, 183 F.3d at 1274 n. 9.

**2.** Canadyne is not suing the Bank as a representative for the Woolfolk Trust or for liability incurred by the Woolfolk Trust itself.

limited to a claim for contribution under § 113(f). *See Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1513 (11th Cir.1996) ("[W]hen one liable party sues another liable party under CERCLA, the action is not a cost recovery action under § 107(a). Rather it is a claim for contribution under § 113(f)."). Accordingly, the Bank's motion for summary judgment on Count I, Plaintiff's claim for cost recovery under § 107(a), is **GRANTED.**

 To succeed on Count II, Plaintiff's § 113(f) contribution claim against the Bank, Plaintiff must present evidence showing that the exception in § 2502(a)(3) of the Asset Conservation Act is applicable here and removes personal liability protection from the Bank. As noted by the Eleventh Circuit, "[t]o gain the benefit of the negligence exception, Canadyne must present evidence that the Bank took particular negligent actions that caused or contributed to the release of hazardous substances." *Canadyne–Georgia Corp.,* 183 F.3d at 1275. The Bank has presented evidence showing that it did not take any negligent actions causing a release or threatened release of a hazardous substance. Plaintiff has not presented any affirmative evidence rebutting the Bank's evidence or showing that the Bank took negligent action. Instead, Plaintiff argues that the Bank is liable under CERCLA because of its breach of "affirmative duties under Georgia statutory and common law to prevent pollution at the Site." Plaintiff admits that it raised these arguments before the Eleventh Circuit, but claims that the "Eleventh Circuit elected not to decide whether evidence of passive negligence arising from duties under state common law or statutory law will be sufficient to invoke the negligence exception under the Asset Con-

servation Act." The Bank responds that the Eleventh Circuit addressed this issue and implicitly dismissed Plaintiff's argument that it had a duty to prevent others from releasing hazardous substances based on Georgia common or statutory law. The Bank points out that the Eleventh Circuit specifically asked the parties to brief the issue of whether it "had a duty not to release or allow the release of hazardous substances into the environment at the Facility." The Bank concludes that under the law-of-the-case doctrine, it had no duty to prevent someone else from releasing a hazardous substance. The Court has studied Plaintiff's arguments and notes that they are identical to the ones raised before the Eleventh Circuit. In discussing this issue, the Eleventh Circuit stated, "Here, the negligence exception requires some action because the Bank had no duty to prevent someone else from releasing hazardous substances. Canadyne has mentioned only one *possible* source of the Bank's duty to prevent others from releasing hazardous substances: CERCLA." *Id.* (emphasis added). The Court believes that this language reflects that the Eleventh Circuit considered and implicitly rejected Plaintiff's argument that Georgia common law and statutory law imposed such a duty. The law-of-the-case doctrine applies not only to matters decided explicitly, but also to matters decided by necessary implication. *See Aldridge v. Lily–Tulip, Inc.,* 40 F.3d 1202, 1207 (11th Cir. 1994). Thus, based on the law-of-the-case doctrine, the Court concludes that Plaintiff's argument that the Bank breached a duty, arising out of Georgia common law and statutory law, to prevent the release of hazardous substances by others lacks merit.[3]

---

**3.** Even if Plaintiff could proceed with these arguments, the statutory language requires it to show that "negligence of [the] fiduciary cause[d] or contribute[d] to the release or

threatened release." 42 U.S.C.A. § 9607(n)(3). Thus, even if the Bank breached an alleged duty created by common law or statute, Plaintiff's claim would fail, as it has

Plaintiff also argues that the Bank is indirectly liable under CERCLA because of its status as a general partner in the Woolfolk Partnerships.[4] Plaintiff contends that based on Georgia partnership law, the Bank should be held indirectly liable under CERCLA for the liabilities of the partnership, WCW, Ltd. III, and general partner T.W. Cleveland. The Bank responds that Plaintiff's argument lacks merit as the Eleventh Circuit previously found that the Bank was not a general partner. The Court agrees with the Bank that the Eleventh Circuit clearly stated that the Bank was not a general partner. *Canadyne–Georgia Corp.*, 183 F.3d at 1275 n. 10 ("To begin with, the Bank was not a general partner, but a co-trustee for a trust, the assets of which included a general partnership interest."). Thus, any indirect CERCLA liability imposed on the Bank would be on the basis of its role as a co-trustee for a trust whose assets included a general partnership interest—i.e., indirect liability would be based on its fiduciary role. As previously noted, Plaintiff has sued the Bank only in its individual capacity, not in its representative capacity.

■ The Bank may be able to escape this indirect liability by virtue of state trust law. *See id.* at 1274 n. 7 ("A trustee holding a general partnership interest in trust, however, might escape this indirect liability by virtue of state trust law."). In the Court's previous order discussing the Bank's motion to dismiss, the Court held that "although Fulton National held a general partnership interest in Woolfolk

Chemical Works in trust, Georgia trust law prohibited liability for the obligations of the partnership." *Canadyne–Georgia Corp. v. NationsBank, N.A.*, 982 F.Supp. 886, 890 (M.D.Ga.1997). Although the holding of that order was reversed, the Eleventh Circuit came to its conclusion without reaching this line of the Court's analysis. *See Canadyne–Georgia Corp.*, 183 F.3d at 1269. Accordingly, the Court believes that its prior reasoning is still valid and would prevent the trustee from being found indirectly liable under CERCLA because it held the general partnership interest in trust. *See Canadyne–Georgia Corp.*, 982 F.Supp. at 888–90.

■ Even assuming, however, that the Bank was indirectly liable as an "owner" under CERCLA in its individual capacity by virtue of state trust law, the Court believes that the protections afforded fiduciaries by the Asset Conservation Act would be applicable and would protect the Bank from personal liability. Because a fiduciary is protected from direct personal liability under CERCLA by of the Asset Conservation Act, it follows, a fortiori, that the Asset Conservation Act would be applicable to a co-trustee facing indirect liability under CERCLA by virtue of its fiduciary status. Accordingly, the Bank is protected from liability unless Plaintiff can show that the Bank took particular negligent actions that caused or contributed to the release of hazardous substances. Plaintiff has not done so and accordingly cannot succeed on this theory of liability. Thus, because Plaintiff cannot succeed on

introduced no evidence showing that this alleged negligence caused or contributed to the release of hazardous substances.

4. The Court notes that Plaintiff has derived its argument from footnote 7 of the Eleventh Circuit's discussion in *Canadyne–Georgia Corp.* The purpose of this footnote was to contrast the anachronistic result of this case to the results that may arise if current Geor-

gia law was applicable. The Eleventh Circuit was not attempting to refer Plaintiff to alternate theories of liability. In addition, this discussion was in the section concerning status as a "covered person" under CERCLA, and the Eleventh Circuit had not yet turned to its discussion of the Asset Conservation Act and the protections afforded by it to fiduciaries.

its CERCLA claim, the Bank's motion for summary judgment is **GRANTED** as to this claim.

### B. Georgia Hazardous Site Response Act

The Bank argues that summary judgment must be granted on Plaintiff's HSRA claim for two reasons. First, the Bank claims that because Plaintiff's CERCLA claim failed, the claim under HSRA must also fail because CERCLA and HSRA employ the same standards for owner liability. Second, the Bank argues that Plaintiff's HSRA claim fails because the statute exempts fiduciaries from liability. Plaintiff responds that although the standards for owner liability under the two statutes are the same, the exemptions for fiduciary liability are different. Plaintiff also responds that its HSRA claim should survive because the Bank served as both a fiduciary and a lender.[5]

Georgia's HSRA statute was enacted after CERCLA and contains very similar liability provisions. *See, e.g., Canadyne–Georgia Corp.*, 183 F.3d at 1275; Robert D. Mowrey, *Georgia Goes Superfund: A Look at the New Georgia Hazardous Site Response Act*, 44 Mercer L.Rev. 1, 9 (1992). HSRA's fiduciary exception, however, was enacted before the Asset Conservation Act and protects lenders and fiduciaries from the uncertain liability they faced under CERCLA at the time. HSRA was enacted shortly after the Eleventh Circuit's decision in *United States v. Fleet Factors Corp.*, 901 F.2d 1550 (11th Cir. 1990), which "stunned real estate lenders" by interpreting the exemption for secured creditors very narrowly. Mowrey, *supra*,

at 12; *see also Fleet Factors Corp.*, 901 F.2d at 1559. Partially in response to *Fleet Factors Corp.*, Congress passed the Asset Conservation Act, which was intended to protect fiduciaries and lenders from uncertainty as to their CERCLA liability. *See Monarch Tile, Inc. v. City of Florence*, 212 F.3d 1219, 1222 n. 2 (11th Cir.2000). Because both fiduciary protection provisions were enacted after the *Fleet Factors Corp.* ruling and because of the similarities between HSRA and CERCLA, the Court sees no reason why HSRA's fiduciary protections would vary significantly from the protections afforded by the Asset Conservation Act. In this context, the Court turns to the Bank's contention that it is within the fiduciary protections of HSRA.

Both HSRA and CERCLA contain fiduciary exemption provisions. Under HSRA, the terms "owner" or "operator" do not include "a person ... who acts in good faith solely in a fiduciary capacity and who did not actively participate in the management, disposal, or release of hazardous wastes." O.C.G.A. § 12–8–92(7). The Asset Conservation Act similarly exempts fiduciaries, with certain exceptions, one being that "the person (A)(i) acts in a capacity other than that of a fiduciary ... and in that capacity, directly or indirectly benefits from a trust or fiduciary relationship." 42 U.S.C.A. § 9607(n)(7). In *Canadyne–Georgia Corp.*, Plaintiff argued that the Bank was not entitled to the protections of the Asset Conservation Act under the exception in § 2502(7) because the Bank had a dual role as fiduciary and primary lender to Mr. Woolfolk and WCW. 183 F.3d at 1274 n. 9. The Eleventh Circuit

---

5. Plaintiff also argues that the Bank lost fiduciary protection because it acted as an issuer of its own stock, which was held in the Woolfolk Trust. Plaintiff has not sufficiently explained its rationale for asserting that this activity took the Bank's actions out from the purview of its fiduciary role. The Court does not believe this argument has merit as it does not find the fact that the Woolfolk Trust held stock from the Bank to be indicative of the Bank's acting in a non-fiduciary role.

dismissed that argument in a footnote, stating that

we are confident Congress did not intend for the mere existence of a lending relationship to be enough to bring a fiduciary under this exception. Canadyne's expansive interpretation of the exception would render the protections of the Asset Conservation Act virtually meaningless for banks, the very group Congress intended to protect.

*Id.* Although the legislative history for the two provisions is different, the Court agrees with the Eleventh Circuit's statement that removing fiduciary protections because a fiduciary also served as lender could not have been the intent of the drafters. HSRA protects lenders, excluding from the definition of "owner" a "person who holds indicia of ownership primarily to protect said person's security interest in the facility." O.C.G.A. 12–8–92(7). It follows that if a lender is shielded from liability, then the Georgia legislature did not intend to expose a protected fiduciary to liability merely because it also served as a lender. Because such a result would be absurd, the Court does not believe that the Bank lost its protected status as a fiduciary because of its lender relationship. Thus, the Bank is not directly liable under HSRA.

■ As with the CERCLA claim, Plaintiff also argues that the Bank is indirectly, or vicariously, liable as an "owner" under HSRA. In support of its argument, Plaintiff claims that as a general partner, the Bank is indirectly accountable for the Woolfolk Partnership's and the other general partner's CERCLA liability. *See Canadyne–Georgia Corp.*, 183 F.3d at 1273 n. 7; *Redwing Carriers*, 94 F.3d at 1499. As previously discussed, the Eleventh Circuit stated, and the Court agrees, that the

Bank was a co-trustee for a trust that held a general partnership interest and was not a general partner itself. *Canadyne–Georgia Corp.*, 183 F.3d at 1275 n. 10. Accordingly, the Bank would be liable only in its representative capacity as a trustee holding the partnership interest. The Court does not believe that the Bank should be indirectly liable as an "owner" in its individual capacity for its status as a co-trustee of a trust that held a general partnership interest. First, the Bank is not liable under state trustee law. As previously discussed in the CERCLA section, the Court's reasoning in *Canadyne–Georgia Corp.*, 982 F.Supp. at 890—that under Georgia trust law, the trustee would not be liable for the partnership's obligations—is applicable here. Also, the same fiduciary protections afforded the Bank from direct liability should protect the Bank from indirect liability. Accordingly, the Bank's motion for summary judgment on Plaintiff's HSRA claim is **GRANTED**.

### C. State–Law Claims

■ Plaintiff also argues the Bank is liable for contribution, indemnity, restitution, and unjust enrichment. "[C]ontribution, indemnity, and restitution require the plaintiff to first demonstrate that the defendant received a benefit from the plaintiff's actions—i.e., that plaintiff paid more than his fair share, or that the plaintiff discharged a duty the defendant owed, or that the plaintiff's actions unjustly enriched the defendant." *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir.1996). Because the Bank had no duty under CERCLA or HSRA to assist in the cleanup, Plaintiff cannot demonstrate that it conferred a benefit on the Bank. *See id.*[6] As to the toxic tort litigation, Plaintiff argues that it conferred a benefit on the Bank by settling

---

**6.** The Court notes that Plaintiff had a legal duty to clean up the contaminated site and therefore cannot succeed in its unjust enrichment claim. *See, e.g., Chem–Nuclear Sys.,*

*Inc. v. Arivec Chems., Inc.,* 978 F.Supp. 1105, 1110 (N.D.Ga.1997) (rejecting unjust enrichment claim and reasoning that plaintiff cannot pursue unjust enrichment claim as benefit

those lawsuits. Plaintiff claims that although there may be no evidence that the Bank caused or contributed to the release of hazardous substances, the Bank was negligent by omission in that it did not prevent the negligence of its fellow partners or the co-owners of the site. As discussed above, however, the Eleventh Circuit has concluded that the Bank had no duty to prevent others from releasing hazardous substances. *Canadyne–Georgia Corp.*, 183 F.3d at 1275. Because the CERCLA definitions for "release" and "hazardous substance" are so broad, they would encompass any of the pollution complained of in the Toxic Tort Litigation.[7] Thus, although the Eleventh Circuit's discussion was in the context of CERCLA, the fact remains that the Bank had no duty during its ownership to prevent the pollution that ultimately caused Plaintiff to incur settlement costs. Because the Bank had no duty to prevent the release of hazardous substances, Plaintiff did not confer a benefit on the Bank by settling the toxic tort litigation. Accordingly, Defendant's motion for summary judgment as Plaintiff's claims for contribution, indemnity, restitution, and unjust enrichment is **GRANTED.**

### D. Declaratory Judgment

Plaintiff seeks a declaratory judgment that the Bank is liable under 42 U.S.C.A.

§ 9613(f) (the CERCLA claim) and O.C.G.A. § 12–8–96.1 (the HSRA claim). In addition, Plaintiff seeks a declaratory judgment that the Bank is jointly and severally liable for contribution and indemnity costs incurred in connection with contamination at the site and for costs incurred in connection with the Toxic Tort Litigation. Finally, Plaintiff seeks a declaratory judgment that the Bank has been unjustly enriched and that the Bank is jointly and severally liable for restitution of costs Plaintiff has incurred and will incur in connection with contamination at the Site. Because the Court has found that the Bank is entitled to summary judgment on all the above claims, Plaintiff's claim for a declaratory judgment as to those claims must also fail. Accordingly, the Bank's motion for summary judgment as to Plaintiff's claims for declaratory relief is **GRANTED.**

### IV. Conclusion

Based on the foregoing analysis, the Bank's summary judgment motion is **GRANTED** as to all claims against it.

---

accrued by virtue of performance of its own legal duty).

**7.** Hazardous substances are defined as, "(A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act ... (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act ... and (F) any

imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15." 42 U.S.C.A. § 9601(14) (West 1995). Arsenic, one of the chief substances of which the Toxic Tort claimants complained, is listed as a hazardous substance by CERCLA. *See* 40 C.F.R. § 302.4 (2000). Moreover, "release" is broadly defined to include "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." 42 U.S.C.A. § 9601(22) (West 1995).